STATE OF NORTH CAROLINA EX REL. COMMISSIONER OF INSURANCE v. NORTH CAROLINA RATE BUREAU, NORTH CAROLINA REINSURANCE FACILITY, NATIONWIDE MUTUAL INSURANCE COMPANY, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, THE AETNA CASUALTY AND SURETY COMPANY, LUMBERMENS MUTUAL CASUALTY COMPANY, GREAT AMERICAN INSURANCE COMPANY, THE TRAVELERS INDEMNITY COMPANY, UNITED STATES FIRE INSURANCE COMPANY, THE SHELBY MUTUAL INSURANCE COMPANY, AMERICAN MOTORIST INSURANCE COMPANY, AND LIBERTY MUTUAL INSURANCE COMPANY v. CAROLINA ACTION, INTERVENOR

IN THE MATTER OF A FILING DATED JUNE 30, 1978, AS AMENDED, BY THE NORTH CAROLINA RATE BUREAU FOR REVISED PRIVATE PASSENGER MOTOR VEHICLE INSURANCE RATES, DOCKET NO. 280

No. 86

(Filed 15 July 1980)

1. **Insurance § 79.2— automobile insurance rate hearing—requirement of audited data—failure to follow lawful procedures—arbitrary and capricious actions**

While a requirement by the Commissioner of Insurance that data in an insurance ratemaking hearing be audited does not, as a general rule, exceed the Commissioner's statutory authority, the Commissioner failed to comply with lawful procedures in attempting to implement the auditing requirement in this hearing, and his actions in this respect were arbitrary and capricious.

Comr. of Insurance v. Rate Bureau

2. Insurance § 79.3 — automobile insurance — differential for rates ceded to Rein-
surance Facility — no unfair discrimination

A determination by the Commissioner of Insurance that a 10% rate dif-
ferential in automobile insurance for insureds ceded to the N.C. Reinsurance
Facility was unfairly discriminatory was not supported by substantial evidence
in view of the entire record.

3. Insurance § 79.1 — rate case — burden of proof

The enactment of G.S. 58-124.21 did not transfer the burden of proof in a
ratemaking hearing to the Commissioner of Insurance, and the burden of prov-
ing the need and reasonableness of a rate increase still rests upon the Rate
Bureau.

4. Insurance § 79.2 — automobile insurance rates — income from invested capital

The Commissioner of Insurance erred as a matter of law in concluding
that the law of this jurisdiction allowed consideration of income from invested
capital in an insurance ratemaking case.

5. Insurance § 79.3 — automobile insurance rates — disapproval of filing — findings
indicating wherein filing is deemed improper

The Commissioner of Insurance did not fail to comply with the require-
ment of G.S. 58-124.21(a) that in his order disapproving a rate filing he indicate
"wherein and to what extent such filing is deemed improper."

6. Insurance § 79.3 — automobile insurance rates — increase in cessions to Rein-
surance Facility — no violation of cap on rate increase

The Commissioner of Insurance erred in concluding that the Rate Bureau
had failed to carry its burden of proving that the increase in the percentage of
cessions to the Reinsurance Facility during the latest reported accident year
and the latest rate increase had not resulted in a rate level which violated the
statutory "cap" established by G.S. 58-124.26.

7. Insurance § 79.1 — automobile insurance rates — incomplete data in original fil-
ing — no deprivation of Commissioner's statutory review period

The Commissioner of Insurance erred in concluding that the Rate
Bureau's submission of an automobile insurance rate filing contained in-
complete North Carolina data which unfairly deprived the Commissioner of a
portion of his statutory period of review where the original filing on 30 June
was accompanied by a letter stating that essential data requested with respect
to liability insurance was totally complete but only 98% complete with respect
to physical damage; when complete expense data was received, minor ad-
justments were made to certain expense ratios and amended filing sheets were
filed on 21 August; the adjustments were of no consequence in the hearing
process since the overall rate increase actuarially indicated amounted to 15.7%
in the original filing and 15.5% on the basis of the final data submitted and the
proposed increase was only 5.6%; the Commissioner did not question the ex-
pense data in any way other than his challenge to its reliability on the ground
it had not been audited; and the Commissioner made no reference to sup-
plementing the incomplete data in his notice of public hearing.

8. **Insurance § 79.1— automobile insurance rate filing—no bad faith or dilatory action**

   The Commissioner of Insurance erred in determining that appellants were guilty of bad faith and dilatory action with regard to an automobile insurance rate filing.

9. **Insurance § 79.1— automobile insurance rate case—intervention by consumer group—hearings throughout State**

   The Commissioner of Insurance acted within his discretion in permitting a consumer group to intervene in an automobile insurance rate case and in allowing hearings to be held throughout the State.

10. **Insurance § 79.3— automobile insurance rates—underwriting profit—business ceded to Reinsurance Facility**

    A finding by the Commissioner of Insurance that a Rate Bureau filing proposed a margin for underwriting profit and contingencies of 5% of earned premium must be set aside to the extent that it finds that a profit margin is proposed on business ceded to the Reinsurance Facility.

11. **Insurance § 79.3— automobile insurance rate hearing—admissibility of various documents**

    The Commissioner of Insurance erred in refusing to admit into evidence in an automobile insurance rate hearing the original rate filing, amended pages of the filing showing revised expense data, a composite of the original filing with the amended pages, a document showing physical damage expense data on a countrywide basis for a five-year period, and charts comparing loss experience of Reinsurance Facility risks and voluntary risks.

12. **Insurance § 79.2— automobile insurance rate filing not in accordance with earlier order on appeal—no bad faith**

    The Commissioner of Insurance erred in finding that the Rate Bureau acted "deliberately" and "in bad faith" in not preparing an automobile insurance rate filing in accordance with the requirements of an earlier order where the earlier order was on appeal to the Court of Appeals at the time such filing was made, since no order of the Commissioner is enforceable pending appeal. G.S. 58-9.5(10).

13. **Insurance § 79.2— automobile insurance rates—underwriting profit margin—capital asset pricing model**

    Use by the Commissioner of Insurance of a "capital asset pricing model" to calculate underwriting profit margins was erroneous as a matter of law and arbitrary and capricious.

14. **Insurance § 79.3— automobile insurance—territorial rate differentials**

    The Commissioner of Insurance erred in finding that territorial rate differentials for automobile insurance violated former G.S. 58-30.4.

    Justice BROCK took no part in the consideration or decision of this case.

ON appeal as a matter of right pursuant to G.S. 7A-30(2) from the decision of the Court of Appeals, 41 N.C. App. 327, 255 S.E.

2d 567 (1979), one judge dissenting, affirming in part and reversing in part the order of the North Carolina Commissioner of Insurance dated 27 September 1978 which had ordered that the 30 June 1978 filing by the North Carolina Rate Bureau and the North Carolina Reinsurance Facility be disapproved. The filing involved proposed revised premium rates for bodily injury and property damage liability, medical payments, and physical damage insurance for non-fleet private passenger automobiles.

The issues on this appeal all involve the propriety of the proceedings before the Commissioner and his order of 27 September 1978. This case was docketed and argued as No. 74 at the Fall Term, 1979.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Isham B. Hudson, Jr., and Hunter, Wharton & Howell by John V. Hunter III for the plaintiff-appellee.*

*Young, Moore, Henderson & Alvis by Charles H. Young, R. Michael Strickland and Charles H. Young, Jr., for appellants.*

*Bailey, Dixon, Wooten, McDonald & Fountain by J. Ruffin Bailey, John N. Fountain and Gary S. Parsons, for American Insurance Association, amicus curiae.*

*Maupin, Taylor & Ellis, P.A., by Armistead J. Maupin and John Turner Williamson, for Insurance Services Office, amicus curiae.*

*Broughton, Wilkins, Ross & Crampton, P.A., by J. Melville Broughton, Jr. and Charles P. Wilkins for National Association of Independent Insurers, amicus curiae.*

CARLTON, Justice.

I.

On 30 June 1978 the North Carolina Rate Bureau, on behalf of its member companies and the North Carolina Reinsurance Facility, filed with the Commissioner of Insurance a proposed revised premium rate schedule for automobile insurance, including bodily injury and property damage liability, medical payments and physical damage insurance for non-fleet private passenger automobiles. The filing stated that calculations substantiated the need for a statewide average increase of 15.7% over

rates then in effect. The filing noted that rates effective at that time had become effective on 1 April 1978 as a result of a filing submitted 29 November 1977 proposing an overall level increase of 6%. We note that pursuant to G.S. 58-124.22(b) the latter had been implemented over the Commissioner's disapproval while his order was on appeal to this Court. We have reversed the Commissioner's disapproval of the 29 November 1977 filing in Case No. 85 filed today. Pursuant to G.S. 58-124.26, the proposed increase *sub judice* was limited to 5.6%. The filing specifically noted that data requested with respect to liability insurance was totally complete but only 98% complete with respect to physical damage insurance. The filing noted that complete data would be available by the time of the hearing. On 21 August 1978, the Rate Bureau submitted another letter to the Commissioner indicating that the completed data indicated the need for a statewide average increase of 15.5% over rates presently in effect. This letter noted that the proposed rate level changes shown in the earlier filing were not affected by the amended calculations. The filing of 30 June 1978 also noted that supporting data justified territorial rate differences within the State according to newly available loss experience within each territory. Territorial rate differences would be limited to plus or minus 5%.

The Commissioner gave notice of public hearing, contending that the filing failed to comply with statutory requirements in a number of respects. The notice also advised that the filing "incorporates and perpetuates" several alleged errors which were contained in various portions of the 1977 filing the Commissioner had rejected in his disapproval order of 27 February 1978. After the hearing, the Commissioner made extensive findings of fact and conclusions of law and disapproved the filing in its entirety. In his disapproval order he also allowed the Bureau 60 days to submit an amended filing consistent with his findings and conclusions and ordered that the Bureau by its amended filings submit the exact data and information he had requested in the notice of public hearing. From the Commissioner's disapproval order, the Rate Bureau appealed to the North Carolina Court of Appeals. That court, Judge Arnold writing, affirmed in part and reversed in part. Judge Arnold simply stated, "Our determination of this appeal is controlled by our decision in *State ex rel. Comr. of Ins. v. N.C. Rate Bureau* (No. 78101NS625, filed 5 June 1979), heard to-

day." 41 N.C. App. at 327, 255 S.E. 2d at 567. On appeal of that earlier case dealing with the 1977 filing, No. 85 filed today, we affirmed in part and reversed in part the Court of Appeals' decision and reversed the Commissioner's order, declared it null and void and ordered the 1977 filing approved. Moreover, we ordered that the escrowed funds representing this proposed rate increase be remitted to the member insurers pursuant to G.S. 58-124.22(b). We hold likewise with respect to this 1978 filing.

Other facts important to an understanding of our decision are noted below.

## II.

[1] The Court of Appeals held that the Commissioner may require that data in this insurance ratemaking hearing be audited. We reverse. We hold that such a requirement does not, as a general rule, exceed the Commissioner's statutory authority. We also hold, however, that the Commissioner failed to comply with lawful procedures in attempting to implement the auditing requirement in this hearing and that his actions in this respect were arbitrary and capricious. This portion of our holding is controlled by Section II. of our opinion in Case No. 85 filed today.

## III.

[2] The Court of Appeals held that the proposed 10% rate differential for insureds ceded to the North Carolina Reinsurance Facility was unfairly discriminatory. We reverse. Applying the whole record test, we hold that the evidence to support the Commissioner's findings and conclusions of unfair discrimination was insubstantial in view of the entire record. This portion of our holding is controlled by Section III. of our opinion in Case No. 85 filed today.

## IV.

[3] The Court of Appeals held that the enactment of G.S. 58-124.21 did not transfer the burden of proof in a ratemaking hearing to the Commissioner of Insurance. We affirm. We hold that the burden of proving the need and reasonableness of a rate increase rests upon the Rate Bureau and that there is no burden upon the Commissioner to disapprove the filing. This portion of our holding is controlled by Section VI. of our opinion in Case No. 85 filed today.

V.

[4] The Court of Appeals held that the Commissioner may require the consideration of income on invested capital in an insurance ratemaking case. We reverse. We hold that the Commissioner erred as a matter of law in concluding that the law of this jurisdiction allowed consideration of income from invested capital in an insurance ratemaking case. This portion of our holding is controlled by Section IV. of our opinion in Case No. 85 filed today.

VI.

[5] The Court of Appeals held that the Commissioner did not fail to comply with the statutory requirement that in his order disapproving a filing he indicate "wherein and to what extent such filing is deemed to be improper." G.S. 58-124.21(a). We affirm albeit for different reasons from those noted by the Court of Appeals. This portion of our holding is controlled by Section VII. of our opinion in Case No. 85 filed today.

VII.

[6] The Commissioner concluded in his order that the Bureau had failed to carry the burden of proving that the increase in the percentage of cessions to the Reinsurance Facility during the latest reported accident year and the rate increase which became effective 1 April 1978 had not resulted in a rate level which violated the statutory "cap" established by G.S. 58-124.26. We reverse. This portion of our holding is controlled by Section III. E. in Case No. 85 filed today.

VIII.

[7] The Commissioner concluded that the Rate Bureau's submission of a filing on 30 June 1978 contained incomplete North Carolina expense data which unfairly deprived the Commissioner of a portion of his statutorily allotted period of review. We vacate this portion of the Commissioner's order and set it aside. It is apparent from the record that the original filing made on 30 June 1978 was accompanied by a letter of transmittal stating, as indicated above, that essential data requested in the filing was virtually complete with respect to automobile liability and approximately 98% complete with respect to physical damage in-

surance. The record also discloses that when complete expense data was received, processed and verified by the Rate Bureau it was determined that certain of the expense ratios required minor adjustments. These adjustments were made and "amended filing sheets" were submitted to the Commissioner on 21 August 1978. It is obvious from the record that these adjustments were insignificant and of little consequence. The overall rate increase actuarially indicated amounted to 15.7% in the original filing and 15.5% on the basis of the final data submitted. Since the proposed increase was only 5.6%, clearly the adjustments were of no significance in the hearing process. Moreover, at no time did the Commissioner question the expense data in any way other than his challenge to its reliability on the basis of its not having been audited. Finally, the Commissioner made no reference to supplementing the incomplete data in his notice of public hearing. This assignment of error is overruled.

## IX.

[8] The Commissioner found and concluded that appellants were guilty of bad faith and dilatory action with regard to the filing in several instances. We vacate and set aside those portions of the Commissioner's order. This portion of our decision is controlled by our holding in Section IX. in Case No. 85 filed today.

## X.

[9] Prior to the public hearing in connection with this matter, Carolina Action, a consumer group, filed a petition to intervene in the proceeding. That petition was granted by the Commissioner over objection by the appellants. Appellants contend that the Commissioner erred in this respect in that G.S. 114-2(8)(a) specifically authorizes intervention by the North Carolina Attorney General "for and on behalf of the using and consuming public" in administrative proceedings and court cases where it appears that intervention would be in the public interest. Moreover, appellants argue that, assuming the Commissioner may permit intervention in a proper case, the Commissioner may not permit such intervention unless some showing is made that the intervenor seeks to represent an interest that will not or cannot be adequately represented by existing parties or the Attorney General. There was in this instance, appellants contend, no such showing made.

We think the Commissioner's findings and conclusions in this respect were proper. Today we hold in Case No. 85, *State ex rel. Commissioner of Insurance v. North Carolina Rate Bureau*, that the review provisions of the North Carolina Administrative Procedure Act (NCAPA), G.S. 150A-1 *et seq.*, control insurance ratemaking cases. One provision of the NCAPA, G.S. 150A-23(d), provides:

> Any person may petition to become a party [to a contested case, here an insurance ratemaking] by filing a motion to intervene as provided in G.S. 1A-1, Rule 24. In addition, any person interested in an agency proceeding may intervene and participate in that proceeding to the extent deemed appropriate by the hearing agency.

While Rule 24 contains specific requirements which control and limit intervention, the second sentence in the statute quoted above clearly provides discretionary intervention in the Commissioner by providing that the agency may permit any interested person to intervene "and participate in [the] proceeding to the extent deemed appropriate." In other words, this discretionary intervention is without limitation and this language has been construed to provide intervention broader than the permissive intervention under Rule 24. *See* Daye, *North Carolina's New Administrative Procedure Act: An Interpretive Analysis*, 53 N.C. L. Rev. 833, 874 at note 199.

Appellants also contend that the Commissioner erred in allowing Carolina Action's petition to hold hearings throughout the State in order to give interested persons an opportunity to present testimony. Again, we find no error in the Commissioner's action. G.S. 150A-33(3) provides that a hearing officer may "[p]rovide for the taking of testimony by deposition." In a matter so important to all the citizens of the State as the determination of automobile insurance rates, we think the Commissioner was clearly within his discretion in allowing the intervention of a consumer group and in allowing hearings to be held throughout the State. This is especially so in light of a complete failure by appellants to show any prejudice to their rights as a result of the intervention and several hearings.

## XI.

[10]  The commissioner found that the Bureau filing proposed a margin for underwriting profit and contingencies of 5% of earned premium in addition to investment income. Appellants correctly note that the filing shows the 5% profit and contingency margin is proposed only with respect to business voluntarily retained by the companies and that no profit margin is proposed on business ceded to the North Carolina Reinsurance Facility. Appellants concede that the Commissioner's failure to limit the scope of this finding of fact to voluntary business was probably an inadvertence. However, we agree with appellants that to the extent it was not or to the extent the Commissioner's denial of the rate adjustment proposed in the filing was based on a mistaken belief that a profit margin was proposed on Facility business, the finding of fact must be vacated and set aside.

## XII.

[11]  During the course of the hearing, the Commissioner refused to admit into evidence numerous exhibits offered by the Rate Bureau. These included the original rate filing, certain amended pages of the filing showing revised expense data, a composite of the original filing with the amended pages, a document showing physical damage expense data on a countrywide basis for a five-year period from 1972-1976, and charts comparing loss experience of Facility risks and voluntary risks.

All of the offered exhibits were properly authenticated and clearly admissible in a hearing of this nature and the Commissioner erred as a matter of law in refusing to admit them.

## XIII.

[12]  Appellants finally contend that the Commissioner's order from which this appeal is taken contains several findings of fact and conclusions of law concerning the contents of a prior order dated 27 February 1978 with respect to an entirely separate rate filing. The latter order is the subject of our decision in Case No. 85 filed today. The Commissioner's findings and conclusions here, however, do not reveal that the earlier order was on appeal to the North Carolina Court of Appeals at the time these findings were entered. Appellants therefore argue that the validity of the findings and conclusions in the 27 February 1978 order to which

the Commissioner made repeated reference were contested and had not as yet been finally adjudicated. Despite this, appellants contend, the Commissioner determined that the Rate Bureau's failure to take certain actions "constituted a refusal, in bad faith, to adhere to a lawfully promulgated order of the Commissioner."

Such findings and conclusions by the Commissioner were clearly erroneous. Today, we hold in Case No. 85, *State ex rel. Commissioner of Insurance v. North Carolina Rate Bureau,* that while the NCAPA controls judicial review of insurance ratemaking procedures, the review provisions of G.S. 58-9 through G.S. 58-27.2 should also apply insofar as those provisions are compatible with the NCAPA. G.S. 58-9.5(10) provides:

> An appeal under this section shall operate as a stay of the Commissioner's order or decision until said appeal has been dismissed or the questions raised by the appeal determined according to law.

The intent of this statute is clearly that no order of the Commissioner shall be enforced pending appeal. Here, the Commissioner attempted to do indirectly what the statute plainly prohibited, *i.e.,* he attempted to enforce compliance with the requirements of the 27 February 1978 order by finding that the Bureau acted "deliberately" and "in bad faith" in not preparing the present filing in accordance with the requirements of the earlier order. Such action, we hold, was erroneous as a matter of law.

## XIV.

[13] The Court of Appeals held that the Commissioner's implementation of a "capital asset pricing model" to calculate underwriting profit margins was erroneous. We affirm. We hold that the Commissioner's attempted implementation of a "capital asset pricing model" to calculate underwriting profit margins was erroneous as a matter of law and arbitrary and capricious. This portion of our decision is controlled by our holding in Section V. of our opinion in Case No. 85 filed today.

## XV.

[14] The filing in this action proposed by inference that territorial rate differentials established in the 29 November 1977 rate filing be continued. The Court of Appeals held, in the action

represented by our opinion in Case No. 85 filed today, that the findings that projections of territorial rate differences did not consider new classification plans and that the alleged failure to consider new classification plans resulted in excessive rates were not supported by the evidence. The Commissioner did not contend that the Court of Appeals erred in that decision and our opinion in Case No. 85 left undisturbed that portion of the Court of Appeals' decision. Here, however, the Commissioner contends that the Court of Appeals erred in not affirming his conclusion of law that the use of territorial rate differentials in the filing is contrary to G.S. 58-30.4.

Since this contention was not before us in Case No. 85, a brief overview of the territorial approach is necessary. Data as to premiums and losses throughout the State are coded and collected on a territorial basis. Each insured vehicle is assigned to the territory *where it is principally garaged* and all premiums and losses with respect to each such vehicle are reported in that territory. The territorial demarcations were established by the Rate Bureau's predecessor organizations and were filed with and approved by the Commissioner. The record also discloses that territorial rates are presently in common usage in automobile insurance throughout the country.

Territorial rates proposed in the filing are statistically calculated on the basis of loss history of the approved territories in the State. The Bureau limited territorial rate differentials in each line of coverage of three levels: (1) five percent over the indicated statewide base rate; (2) five percent under the indicated statewide base rates; and (3) the indicated statewide base rate. Accordingly, for each line of coverage, the loss experience of each territory was computed in one of the three territorial rates assigned to it.

The Commissioner's conclusion of law was to the effect that the use of territorial rate differentials is contrary to G.S. 58-30.4. The former version of that statute under which this ratemaking took place provided:

The North Carolina Rate Bureau shall promulgate a revised basic classification plan and a revised subclassification plan for coverages on private passenger (nonfleet) motor vehicles in this State affected by the provisions of G.S. 58-30.3. Said revised basic classification plan will provide for the following

four basic classifications to wit: (i) Pleasure use only; (ii) pleasure use except for driving to and from work; (iii) business use; and (iv) farm use. The North Carolina Rate Bureau shall promulgate a revised subclassification plan which appropriately reflects the statistical driving experience and exposure of insureds in each of the four basic classifications provided for above, except that no subclassification shall be promulgated based, in whole or in part, directly or indirectly, upon the age or sex of the person insured. Such insureds having less than two years' driving experience . . . and shall provide for premium surcharges for drivers having a driving record consisting of a record of a chargeable accident or accidents, or having a driving record consisting of a conviction or convictions for a moving traffic violation, or any combination thereof. . . . The classification plans and subclassification plans so promulgated by the Bureau shall be subject to the filing, hearing, disapproval, review and appeal procedures before the Commissioner and the courts as provided for rates and classification plans in G.S. 58-128, 58-129, and 58-130.

The Commissioner, in his order, did not indicate in what respect he contends the use of territorial rates violates the quoted statute. The statute makes no mention of territorial rates. We assume the Commissioner's contention to be that because the statute does not specifically authorize the use of territorial rates, it impliedly prohibits their use. We disagree. First of all, the statute contains a specific prohibition against the establishment of subclassifications based on the age or sex of the person insured. There is no such specific prohibition of territorial rates. More importantly, the Commissioner's interpretation of the quoted statute is in direct conflict with G.S. 58-124.25. That statute provides:

Rates, rating systems, *territories*, classifications and policy forms lawfully in use on September 1, 1977, may continue to be used thereafter, notwithstanding any provision of this Article. (Emphasis added.)

It is clear from this statute that territories are not "classifications" and that their use is therefore not prohibited by G.S. 58-30.4. Moreover, we find absolutely no intent on the part of our Legislature to abolish territories as rating factors.

We therefore affirm that portion of the Court of Appeals' decision reversing that portion of the Commissioner's order prohibiting the use of territorial differentials and rates.

## XVI.

In accordance with our discussion above of the various portions of the Court of Appeals' opinion, the decision of that Court is

Affirmed in part and reversed in part.

G.S. 58-9.6(b) provides that we may "affirm or reverse the decision of the Commissioner, declare the same null and void, or remand the case for further proceedings; or [we] may reverse or modify the decision if the substantial rights of the appellants have been prejudiced . . . ." G.S. 150A-51 provides substantially the same powers. In cases involving narrow and specific error in the Commissioner's order, we would ordinarily remand the case to the Commissioner for further proceedings. *See* Case No. 85 filed today. Here, however, it is apparent that the error committed by the Commissioner in the proceedings and resulting order before us are of such magnitude as to make remand futile. The order of the Commissioner dated 27 September 1978 is therefore

Reversed and declared null and void.

Accordingly, all escrowed premium funds representing this proposed rate increase shall be remitted to the member insurers forthwith pursuant to G.S. 58-124.22(b). *See* Case No. 85 filed today.

It is so ordered.

Justice BROCK took no part in the consideration or decision of this case.