0564

Ed YOUNG, Appellant, v. SOUTH CAROLINA DEPARTMENT OF HIGHWAYS AND PUBLIC TRANSPORTATION, Respondent.

(336 S. E. (2d) 879)

Court of Appeals

*Wm. Reynolds Williams,* of *Willcox, Hardee, McLeod, Buyck & Baker,* Florence, *for appellant.*

*Asst. Atty. Gen. William L. Todd,* Columbia, *for respondent.*

Heard Sept. 25, 1985.

Decided Oct. 23, 1985.

CURETON, Judge:

Appellant Ed Young appeals from an order of the circuit court affirming the decision of the South Carolina Department of Highways and Public Transportation which denied him permits for four outdoor signs located on his property in Florence County along I-95. We affirm.

Young is a co-owner of a Days Inn, a Sheraton Motel and the Swamp Fox Inn. In August 1981 he erected four billboards at a cost of $80,000. These outdoor signs advertise the

motels and are located on Young's farm which is located in an unzoned area. In addition to normal farming operations, Young operates two small businesses on the farm. One business is Gasoholics, Inc.; the other business is Lunn Young Seed Company.

Gasoholics, Inc. produces ethanol, all of which is used to fuel Young's farm equipment. Gasoholics, Inc. operates approximately four months each year. The seed company also is a seasonal business and it sells surplus wheat, soybean and oat seeds to customers who come to the farm. Young has not obtained a retail license for either the gasohol or seed business.

Knowing the outdoor signs would not qualify for a permit as on-premises signs,[1] Young sought to have them qualify as signs in an unzoned commercial or industrial area. To accomplish this result, he moved the gasohol and seed businesses to the area where the outdoor signs had been erected. Gasoholics, Inc. was moved into an unattended building lacking telephone and lavatory services. The seed company was moved into an unattended building lacking water, electricity, telephone and lavatory services. The seed company was surrounded by fields and access to it is by a private road which Young described as "bad" and "boggy." Young's transparent attempt to "commercialize" the farm failed and the Department informed him that the billboards had to be removed.

Through the appropriate administrative procedure Young obtained a final Department decision which held the signs to be in violation of the Highway Advertising Control Act, Section 57-25-110 to 220, 1976 Code of Laws of South Carolina and the regulations arising thereunder. The Department's final decision required Young to remove the billboards. Young appealed to the circuit court attacking the Department's decision on the ground that it is "in violation of constitutional and statutory provisions; in excess of the statutory authority of the Department; clearly erroneous in view of the reliable, probative, and substantial evidence on

---

[1] On-premise signs are located "contiguous with the land occupied by the commercial or industrial activity...." R 63-342(Z), 1976 Code of Laws of South Carolina.

the whole record; or arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." The circuit court affirmed the Department's decision.

This appeal is governed by the Administrative Procedures Act, Section 1-23-310 to 400, 1976 Code of Laws of South Carolina, as amended. Our scope of review is set forth in Section 1-23-380(g) which provides six grounds for reversal or modification of agency decisions. Two grounds are relevant here. Reversal may be warranted if the "administrative findings, inferences, conclusions or decisions are ... [i]n violation of constitutional or statutory provisions; ... [or] [i]n excess of the statutory authority of the agency." Section 1-23-380(g)(1) and (2). *See Carter v. South Carolina Department of Highway and Public Transportation*, 279 S. C. 332, 334-35, 306 S. E. (2d) 614, 615 (1983) (Supreme Court set forth scope of review in appeal from Highway Department permit decisions.)

South Carolina's public policy regarding outdoor advertising along interstate highways is set forth in Section 57-25-130, 1976 Code of Laws of South Carolina. The General Assembly declared that:

> [O]utdoor advertising is ... a business which should be allowed to exist and operate *where other business and commercial activities are conducted* ... however, to prevent unreasonable distraction of operators of motor vehicles ... and to preserve, and enhance the natural scenic beauty or aesthetic features of the highways and adjacent areas, the General Assembly ... declares ... that the erection and maintenance of outdoor signs ... shall be regulated.... (emphasis added).

Section 57-25-130.

By statute, outdoor signs are permitted in designated areas which include "unzoned commercial or industrial areas." Section 57-25-140(a)(8). An unzoned commercial, business, or industrial area is defined as "the land occupied by the *regularly used building*, parking lot, and *storage or processing area* of a commercial business, or industrial activity.... Section 57-25-120(d) (emphasis added). Commercial or industrial activities are those which are generally

recognized as commercial or industrial; however, among those activities which are expressly declared not to be commercial or industrial are "outdoor advertising structures" and "transient or temporary activities." Section 57-25-120 (e)(1) and (4).

Young does not argue that his businesses satisfied Department regulatory requirements. Rather he argues that the Department exceeded its statutory authority by adopting a definition of "transient or temporary" which, Young argues, is contrary to the intention of the General Assembly. We reject his argument.

The State Highway and Public Transportation Commission, formerly the State Highway Commission, is expressly directed to promulgate rules and regulations governing the issuance of permits for billboards. Section 57-25-150(d). Based on this statutory authority the Department promulgated the following regulation:

> Transient or Temporary Activities, shall consist of those activities that are not open for business at least six months of the year or does (sic) not maintain normal hours of business. . . .

R 63-342(Y), 1976 Code of Laws of South Carolina.

The key issue in this case is whether the regulation is a proper exercise of authority granted to the Department. In our view, the regulation is a reasonable exercise of the Department's authority. Our Supreme Court has held that interpretive rules are "entitled to great respect by the courts but [are] not binding on them." *Faile v. South Carolina Employment Security Commission*, 267 S. C. 536, 540, 230 S. E. (2d) 219, 221 (1976). An interpretive rule is a rule which is promulgated by an administrative agency to interpret, clarify or explain the statutes or regulations under which the agency operates. 22 Words and Phrases, "Interpretive Rule," 88 (Cum. Supp. 1985); *State ex rel. Commissioner of Insurance v. North Carolina Rate Bureau*, 300 N. C. 460, 269 S. E. (2d) 538, 568 (1980) (interpretive rules interpret and apply the provisions of statute under which the agency operates). "An administrative regulation is valid so long as it is reasonably related to the purpose of the enabling legislation." *Hunter & Walden Co. v. South Caro-*

*lina State Licensing Board for Contractors,* 272 S. C. 211, 213, 251 S. E. (2d) 186 (1978).

While the General Assembly did not define "transient or temporary" by statute, it has implicitly authorized the Department to interpret, clarify and explain the statute by authorizing the Department to promulgate regulations governing outdoor sign permits. Administrative agencies may be authorized " 'to fill up the details' by prescribing rules and regulations for the complete operation and enforcement of the law within its expressed general purpose." *Heyward v. South Carolina Tax Commission,* 240 S. C. 347, 355, 126 S. E. (2d) 15, 19-20 (1962); 73 C.J.S. *Public Administrative Law and Procedure* Section 67 (1983) (in the first instance, defining a particular statutory term is an administrative function). We hold the Department's definition is not overly restrictive and further the definition provides specific time limitations which will assure that the statute will be applied in a consistent manner. *See Boucher Outdoor Advertising Co. v. Minnesota Department of Transportation,* 347 N. W. (2d) 88, 91 (Minn. App. 1984).

Young also argues that under the statute the gasohol and seed businesses are commercial or industrial activities and therefore, he is entitled to a permit for the signs since they are located in an unzoned commercial or industrial area. The Department argues that Young is not entitled to the permits under the clear language of the statute because the gasohol and seed businesses are not industrial or commercial activities. We reject Young's argument and hold that the Department's position is correct.

The trial judge did not make any finding or conclusion as to whether the farm related businesses are commercial or industrial enterprises. Young argues that this was error. We hold that if this were error it was harmless because of our ruling that the regulation, discussed above, is valid. Moreover, our review of the record convinces us that the gasohol and seed businesses do not constitute commercial or industrial enterprises under the statute. Both businesses were seasonal businesses; did not keep regular hours; were not readily accessible to the public; existed in unattended buildings lacking common utilities, and were not licensed retail establishments. Gasoholics, Inc.

conducted no commercial business activity since it did not engage in sales to customers. All of its product was consumed on the farm. The seed company's business involved minimal activity at the storage site. Customers wanting to purchase seed would ordinarily arrive at the farm and one of Young's employees would obtain seed from the seed company's building for them. From these facts, we conclude that the businesses are not commercial or industrial activities.

For the foregoing reasons, the order of the circuit court is

Affirmed.

SANDERS, C. J., and BELL, J., concur.