STATE OF NORTH CAROLINA, ON RELATION OF JAMES E. LONG, COMMISSIONER OF INSURANCE OF NORTH CAROLINA, PLAINTIFF v. INTERSTATE CASUALTY INSURANCE COMPANY, DEFENDANT v. NORTH CAROLINA INSURANCE GUARANTY ASSOCIATION, DEFENDANT-INTERVENOR v. IFCO, INC., FINCO, INC., AND SHIVAR AND SON PREMIUM FINANCE COMPANY, INC., DEFENDANT-INTERVENORS

No. 9110SC777

(Filed 16 June 1992)

1. **Rules of Civil Procedure § 24 (NCI3d) — service contracts guaranteed by insurer — liquidation of insurer — no right of purchasers to intervene**

Purchasers of canceled extended automobile service contracts guaranteed by defendant insurer were not entitled to intervene as a matter of right under N.C.G.S. § 1A-1, Rule 24(a)(2) in a proceeding to liquidate defendant since they may protect their interests by filing a proof of claim pursuant to N.C.G.S. § 58-30-190.

**Am Jur 2d, Parties § 127.**

2. **Rules of Civil Procedure § 24 (NCI3d) — denial of permissive intervention — no abuse of discretion**

The trial court did not abuse its discretion in denying appellants' motion under N.C.G.S. § 1A-1, Rule 24(b)(2) for permission to intervene in a proceeding to liquidate defendant insurer on the ground that such intervention would unduly delay and prejudice the adjudication of the rights of the original parties.

**Am Jur 2d, Parties § 127.**

APPEAL by plaintiff intervenor G. Harrison Hamil, on behalf of himself and his proposed class, from order entered 4 January 1991 by *Judge Henry V. Barnette, Jr.* in WAKE County Superior Court. Heard in the Court of Appeals 14 April 1992.

In 1985, William C. Shackelford (Shackelford) founded National Warranty Corporation (National Warranty) for the purpose of selling extended automobile service contracts to purchasers of new and used cars. These contracts were known as the "Winners Circle Protection Plan." Purchasers of "Winners Circle" contracts paid an extra several hundred dollars at the time they purchased an automobile and in return they received a warranty longer than that offered by the selling dealer or manufacturer. During 1985 and 1986, National Warranty sold thousands of these contracts in eight states, including North Carolina. The terms of these contracts provided that National Warranty had the right to terminate the contracts, but guaranteed a "refund for the cost of the unused protection."

Interstate Casualty Insurance Company (Interstate) guaranteed some of these "Winners Circle" contracts. The terms of Interstate's guarantee provided that if National Warranty did not pay the claim within sixty days, the consumer could apply directly to Interstate for the protection promised by the warranty.

In September 1986, National Warranty mailed a Notice of Cancellation to all service contract purchasers whose contracts were still in force. Soon thereafter, the N. C. Attorney General's office received a large number of complaints from holders of these Winners Circle contracts. After investigation, the State advised National Warranty, Interstate, Shackelford and James W. McDaniel (President of National Warranty) that it considered their acts and practices in relation to the Winners Circle contracts to constitute an unfair and deceptive trade practice in violation of G.S. 75-1.1. On 23 February 1987, all parties entered into a settlement agreement which provided that National Warranty would make a *pro rata* refund to every Winners Circle contract purchaser who requested it.

After execution of this settlement agreement, the State observed that National Warranty was not in compliance with the terms of the settlement. The State then filed an enforcement action, which was settled by a second settlement agreement dated 10 February 1989, under which the State released National Warranty, Interstate,

STATE EX REL. LONG v. INTERSTATE CASUALTY INS. CO.

[106 N.C. App. 470 (1992)]

Shackelford and McDaniel from all claims in consideration of a lump sum payment of $122,429.

On 28 March 1989, a class action was filed against National Warranty on behalf of purchasers of the terminated Winners Circle contracts. This class action complaint asserted claims against National Warranty, Interstate, and Shackelford. Shackelford was alleged to be the *alter ego* who completely dominated both National Warranty and Interstate. On 1 August 1989, the Lenoir County Superior Court dismissed this complaint and this Court affirmed the dismissal in an unpublished opinion. *Cox v. National Warranty Corp.*, 103 N.C.App. 170, 404 S.E.2d 512 (1991).

While the *Cox v. National Warranty* appeal was pending, as a result of the apparent insolvency of Interstate, the State instituted the present liquidation proceeding in Wake County Superior Court. On 9 April 1990, an order was entered appointing the North Carolina Commissioner of Insurance as the liquidator of Interstate. On 8 May 1990, the plaintiffs in the *Cox v. National Warranty* action filed a class Proof of Claim in the liquidation proceeding. Thereafter, on 7 September 1990, Philip J. Wise (Wise) filed a Motion to Intervene on behalf of himself and other persons similarly situated. Wise was a plaintiff class member in the original *Cox v. National Warranty* action. Before this motion was heard, Wise moved that G. Harrison Hamil (Hamil) be substituted as representative for the intervenors.

On 4 January 1991, the trial court entered an order denying the motion to intervene. Hamil and the class he represents (appellants) appeal the denial of their motion to intervene.

*Attorney General Lacy H. Thornburg, by Associate Attorney General William W. Finlator, Jr., for plaintiff appellee.*

*Moore & Brown, Washington, D. C., by Beverly C. Moore, Jr., and Moore & Brown, Winston-Salem, N. C., by B. Ervin Brown, II, for plaintiff intervenor appellant G. Harrison Hamil.*

*Moore & Van Allen, by Joseph W. Eason, A. Bailey Nager, and Christopher J. Blake, for defendant appellee North Carolina Insurance Guaranty Association.*

WALKER, Judge.

Appellants contend the trial court should have granted their motion to intervene both as a matter of right pursuant to Rule

IN THE COURT OF APPEALS 473

STATE ex rel. LONG v. INTERSTATE CASUALTY INS. CO.

[106 N.C. App. 470 (1992)]

24(a)(2), N.C. Rules of Civil Procedure and permissively pursuant to Rule 24(b), N.C. Rules of Civil Procedure. We now examine each of these contentions separately.

[1] Appellants argue that they should be allowed to intervene as a matter of right in order to obtain copies of all the Winners Circle contracts. They assert this information is needed so that other Winners Circle purchasers can be informed of their rights. In particular, appellants contend that unless they are allowed to intervene, Winners Circle purchasers in Georgia will not be informed of a $25,000 Interstate deposit available in that state. We find no merit in appellants' contentions.

Rule 24(a)(2) provides:

(a) *Intervention of right.*—Upon timely application anyone shall be permitted to intervene in an action:

. . . .

(2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Rule 24(a)(2) requires three prerequisites before intervention is granted as a matter of right: (1) an interest relating to the property or transaction; (2) practical impairment of the protection of that interest; and (3) inadequate representation of that interest by existing parties. *Ellis v. Ellis*, 38 N.C.App. 81, 247 S.E.2d 274 (1978).

We recognize that appellants have met the first requirement for intervention as a matter of right. As purchasers of the terminated Winners Circle contracts (which were guaranteed by Interstate), they have an interest in the subject matter of this liquidation proceeding. However, appellants have failed to establish the other requirements which must be met before intervention as a matter of right is allowed.

In order to adequately protect their interests, appellants assert that intervention is required. However, they may protect their interests by filing a Proof of Claim pursuant to G.S. 58-30-190, which from the record it appears they have already done. If the

liquidator denies their Proof of Claim, appellants may thereafter obtain judicial review of the matter under G.S. 58-30-205. Furthermore, we fail to see how their interest will not be adequately represented by the liquidator. In his capacity as Liquidator, the Commissioner of Insurance is bound by law to protect the interests of policyholders, claimants and creditors. G.S. 58-30-1; G.S. 58-30-105; G.S. 58-30-120.

Pursuant to Article 30 of Chapter 58, the proper mechanism for asserting a claim against an insurer in liquidation is by means of filing a Proof of Claim and the purpose of this procedure is in part to enhance "efficiency and economy of liquidation." G.S. 58-30-1(c)(3). Allowing intervention as an alternative to the established procedures of Article 30 could only increase the costs of liquidation and therefore decrease the assets available to all claimants (including appellants). Accordingly, we hold the trial court did not err in denying appellants' motion to intervene as a matter of right.

[2] Appellants next contend the trial court erroneously denied their motion to intervene under Rule 24(b)(2), N.C. Rules of Civil Procedure. Permissive intervention under Rule 24(b)(2) rests within the discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Ellis v. Ellis*, 38 N.C.App. 81, 247 S.E.2d 274 (1978). In the present case, the trial court denied appellants' motion under Rule 24(b)(2) "because such intervention will unduly delay and prejudice the adjudication of the rights of the original parties." The record before us supports this conclusion and does not reveal any abuse of discretion.

For the aforementioned reasons, the decision of the trial court is

Affirmed.

Judges LEWIS and WYNN concur.