**CHARLES SCHWAB & CO. v. McENTEE**

[225 N.C. App. 666 (2013)]

CHARLES SCHWAB & COMPANY, INC, Plaintiff
v.
JOHN MCENTEE, Personal Representative of the ESTATE OF ALAN J. MCENTEE
AND KELLY MCENTEE, a/k/a Kelly Pecha, Defendants

No. COA12-897

Filed 5 March 2013

**1. Appeal and Error—jurisdiction on appeal—settlement agreement**

An appeal from the denial of a motion to intervene in an interpleader action to determine the rightful beneficiary to an individual retirement account was properly before the Court of Appeals where the Estate contended that the Association's notice of appeal was filed after the named parties filed a stipulation of dismissal. The settlement was approved on the same day the motion to intervene was denied and was a final judgment as to the named parties, so that the later stipulation of dismissal had no bearing on the Association's right to appeal.

**2. Civil Procedure—intervention—estate—adequate representation by personal representative**

In an interpleader action to determine the rightful beneficiary of an individual retirement account, the American Diabetes Association's motion for intervention as of right was properly denied. The Association failed to satisfy the third of the three requirements for intervention: that its interests were not adequately represented by the personal representative in the interpleader action.

**3. Civil Procedure—permissive intervention—denied**

There was no abuse of discretion in the denial of permissive intervention by the American Diabetes Association in an in an interpleader action to determine the rightful beneficiary of an individual retirement account. The trial court could properly conclude that the Association's interest in the interpleader action was adequately represented by the personal representative of the Estate.

Appeal by Defendant from order entered 17 May 2012 by Judge Richard D. Boner in Mecklenburg County Superior Court. Heard in the Court of Appeals 7 January 2013.

**CHARLES SCHWAB & CO. v. McENTEE**

[225 N.C. App. 666 (2013)]

*Essex Richards, PA, by Edward G. Connette and Elizabeth A. Buckner, for Defendant-Appellee John McEntee, as Personal Representative of the Estate of Alan J. McEntee.*

*Norelli Law, PLLC, by Nancy Black Norelli, Esq., and Louis A. Bernard, Esq., Pro Hac Vice, for Intervenor-Appellant American Diabetes Association.*

DILLON, Judge.

The American Diabetes Association appeals from the trial court's order denying its Motion to Intervene in an interpleader action filed by Charles Schwab & Company, Inc. (Schwab) for the purpose of determining the rightful beneficiary of an individual retirement account owned by Alan J. McEntee (the Decedent) and held by Schwab. For the following reasons, we affirm the trial court's order denying intervention.

## I. Factual & Procedural Background

The Decedent opened IRA #6162-1512 (the IRA) with Schwab on or about 13 April 1993. The Decedent designated his then-girlfriend, Kelly McEntee, a/k/a Kelly Pecha (Kelly), as the sole beneficiary of the IRA at that time. The Decedent and Kelly subsequently married on 5 June 1996.

In June 2004, the Decedent and Kelly separated after approximately eight years of marriage. The parties thereafter entered into a written separation agreement (the Separation Agreement), which set forth the following provisions pertaining to distribution of the IRA:

> Schwab IRA Retirement Account #6162-1512. Husband owns a tax-deferred Alan [sic] Schwab IRA retirement account which held approximately one hundred seventy two thousand four hundred and twenty dollars ($172,420.00) at the date of separation. Wife conveys any and all right, claim or interest she may have in and to Alan [sic] Schwab IRA #6162-1512, to Husband. This account is distributed to Husband and is Husband's separate property.
>
> . . . .
>
> EQUITABLE DISTRIBUTION. The property settlement as provided herein is the act of Husband and Wife in equitably dividing their property as provided under

N.C.G.S. § 50-20(d). Each releases the other from any further claim which could or might arise in favor of either under N.C.G.S. § 50-20 or any other state or federal law involving division of property acquired during marriage.

. . . .

ESTATE. The parties each waive any right which either may have . . . [t]o assert claims or rights in and to the estate of the other[.]"

. . . .

FINAL SETTLEMENT. It is the intent of the parties that this Agreement constitute a final settlement of all rights and claims arising out of their marriage with regard to alimony and distribution of property. Each party acknowledges and agrees that the settlement herein set forth constitutes an equitable division and distribution of all marital property and each party waives, releases and relinquishes unto the other party, his or her heirs, executors, administrators and assigns, any and all rights and claims to marital or separate property under the provisions of North Carolina General Statutes § 50-20 *et seq.* or any other rule, statute, or law, local, state or federal.

The Decedent and Kelly executed the foregoing Separation Agreement on or about 25 August 2004, and their divorce became final on 21 June 2006.

On 4 September 2008, the Decedent executed two documents: (1) the Alan J. McEntee Family Trust (the Living Trust); and (2) his Last Will and Testament (the Will). In the Will, the Decedent named his brother, John McEntee, to serve as the personal representative thereunder and further named the Living Trust as the primary beneficiary of his estate. The Living Trust names John McEntee and the American Diabetes Association (the Association) as its primary beneficiaries to receive the assets of the Living Trust upon the Decedent's death. However, at no time following the Decedent's divorce from Kelly did the Decedent contact Schwab to remove Kelly as the designated beneficiary of the IRA.

The Decedent died on 4 September 2010. Following the Decedent's death, Kelly contacted Schwab to claim ownership of the

IRA and the proceeds to be paid therefrom. However, John McEntee, as the personal representative of the Decedent's estate (the Estate), also contacted Schwab and asserted that the proceeds from the IRA should be paid over to the Estate, citing the Separation Agreement as evidence that Kelly had relinquished her right to the proceeds from the IRA. Kelly countered that she and the Decedent had remained friends following their divorce, that the Decedent had consistently expressed his intent to provide for her after his death, and that the Decedent's failure to remove her as the designated beneficiary of the IRA was evidence of this intent.

On 8 December 2011, Schwab filed an Interpleader Complaint in Mecklenburg County Superior Court for the purpose of resolving the parties' competing claims to the IRA. On 3 January 2012, Schwab filed a Motion for Order Authorizing Schwab to Liquidate and Deposit Funds with the Clerk Pursuant to Rule 22, and for Dismissal from the Case (Schwab's Rule 22 Motion). Both Kelly and the Estate filed answers to Schwab's Interpleader Complaint and asserted cross-claims against one another claiming that each was entitled to the funds in question. On 1 February 2012, the trial court issued an order directing the parties to participate in alternative dispute resolution. Subsequently, the hearing on Schwab's Rule 22 Motion was scheduled to be heard on 17 April 2012. Prior to the Rule 22 Motion hearing, however, Kelly and the Estate executed a settlement agreement (the Family Settlement Agreement), which purported to resolve all claims in the action. Under the terms of the Family Settlement Agreement, Kelly would receive $170,000.00, and the Estate would receive the balance of the proceeds from the IRA.[1]

However, on 16 April 2012, the day prior to the hearing on Schwab's Rule 22 Motion, the Association submitted a Motion to Intervene in the action pursuant to Rule 24 of the North Carolina Rules of Civil Procedure. The Association claimed a right to intervene in the action based upon its status as a primary beneficiary under the Decedent's Living Trust, which was a primary beneficiary under the Decedent's Will. The Association asserted that "[t]he [IRA] funds in question should properly flow to the Estate of [the Decedent] and then to said Living Trust of which [the Association] is a beneficiary." The Association further asserted that it had not been served with a copy of Schwab's Interpleader Complaint; that it had no knowledge of

---

1. Although the appellate record is silent as to the precise amount distributed to the Estate under the Family Settlement Agreement, the Estate represents in its appellee brief that it received approximately $161,240.87.

the interpleader action until on or about 30 March 2012; that the parties had requested the Association's participation in the Family Settlement Agreement on or about 30 March 2012; that the Association's participation in the Family Settlement Agreement would render its interest in the IRA "substantially less than that to which it [was] entitled"; and that it believed that "the parties in this action [were] contemplating a compromise settlement which would lead to dismissal of the action with the [Association] having no opportunity to be heard and with the funds being distributed to the current parties rather than being retained with Schwab pending a judicial determination of the rights of the [Association] or the parties."

The following day, on 17 April 2012, Schwab's Rule 22 Motion came on for hearing in Mecklenburg County Superior Court. When the case was called, the parties to the interpleader action—Schwab, Kelly and the Estate (collectively, the Named Parties)—informed the court that an agreement had been reached with respect to the IRA and submitted the Family Settlement Agreement for the court's approval. The Association's Motion to Intervene, to which both Kelly and the Estate objected,[2] was also brought to the court's attention. After hearing arguments from both sides, the trial court orally denied the Association's Motion to Intervene.

Further, by written order entered 17 April 2012, the trial court approved the Family Settlement Agreement and ordered distribution of the proceeds from the IRA pursuant thereto, concluding that the Family Settlement Agreement was "reasonable" and "result[ed] in a full resolution of all matters in controversy in [the] action." Although the trial court orally denied the Association's motion to intervene in open court on 17 April 2012, a written order denying the motion was not entered until 17 May 2012. The Association filed its notice of appeal from the trial court's 17 May 2012 order that same day. In the interim, on 14 May 2012, the Named Parties filed a stipulation of dismissal, dismissing with prejudice all claims and crossclaims asserted in the interpleader action.

## II. Jurisdiction

[1] At the outset, we address the Estate's contention that this appeal is not properly before us. The Estate contends that this Court lacks jurisdiction over this matter because the Named Parties filed a stipu-

_____

2. The Estate served Schwab, Kelly, and the Association with its Response and Memorandum in Opposition to the Association's Motion to Intervene on 17 April 2012.

lation of dismissal with prejudice as to the interpleader action on 14 May 2012, while the Association did not file its notice of appeal from the trial court's order denying intervention until 17 May 2012.

Rule 41(a) of the North Carolina Rules of Civil Procedure permits a plaintiff to voluntarily dismiss an action "by filing a stipulation of dismissal signed by all parties who have appeared in the action." N.C. Gen. Stat. § 1A-1, Rule 41(a)(1)(ii) (2011). This Court has held, however, that " 'a voluntary dismissal under Rule 41 will lie only prior to entry of *final judgment*[,]' " and that a dismissal after a final judgment has been entered is "of 'no legal efficacy[.]' " *Massey v. Massey*, 121 N.C. App. 263, 268, 465 S.E.2d 313, 316 (1996) (citation omitted). "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Veazey v. City of Durham*, 231 N.C. 357, 361-62, 57 S.E.2d 377, 381 (1950).

Here, the trial court's 17 April 2012 order was a "final judgment" with respect to the Named Parties in that it left "nothing to be judicially determined" among them. Indeed, the trial court characterized its order as such in noting that the Family Settlement Agreement represented "a full resolution of all matters in controversy in this action." The Named Parties' subsequent 14 May 2012 stipulation of dismissal thus had no bearing on the Association's right to appeal from the trial court's denial of its Motion to Intervene, which, although ruled upon in open court at the 17 April 2012 hearing, was not entered, i.e., reduced to writing and filed, until 17 May 2012. To hold otherwise would deprive the Association of an appeal from the trial court's ruling on intervention, as the 30-day window for noticing an appeal from that ruling did not begin to run until the written order was entered on 17 May 2012. *See Mastin v. Griffith*, 133 N.C. App. 345, 346, 515 S.E.2d 494, 495 (1999) (holding that "an order may not properly be appealed until it is entered"); N.C. R. App. P. 3(c)(1) (2013) (providing that an appeal must be taken "within thirty days *after entry* of judgment" (emphasis added)); *Abels v. Renfro Corp.*, 126 N.C. App. 800, 803, 486 S.E.2d 735, 737 (1997) (holding that an "[a]nnouncement of judgment in open court merely constitutes 'rendering' of judgment, not entry of judgment"); N.C. Gen. Stat. § 1A-1, Rule 58 (2011) (providing that "a judgment is entered when it is reduced to writing, signed by the judge, and filed with the clerk of court"). This argument is accordingly overruled, and we proceed to address the merits of the Association's appeal.

CHARLES SCHWAB & CO. v. McENTEE

[225 N.C. App. 666 (2013)]

### III. Analysis

The Association contends (1) that the trial court erred in denying its motion to intervene as of right pursuant to Rule 24(a)(2) of the North Carolina Rules of Civil Procedure; (2) that the trial court erred in denying the Association's request for permissive intervention pursuant to Rule 24(b) of the North Carolina Rules of Civil Procedure; and (3) that the Family Settlement Agreement must be set aside due to the trial court's error in failing to join the Association as a party to the interpleader action. We address these contentions in turn.

### A. Intervention as of Right

[2] The Association first contends that the trial court erred in denying its motion to intervene as of right. Intervention as of right is governed by N.C. Gen. Stat. § 1A-1, Rule 24(a), which provides as follows:

> Upon timely application anyone shall be permitted to intervene in an action:
>
> (1) When a statute confers an unconditional right to intervene; or
>
> (2) When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

N.C. Gen. Stat. § 1A-1, Rule 24(a) (2011).

The Association does not advance a statutory basis for intervention; rather, the Association contends that Rule 24(a)(2) provides a non-statutory basis for intervention in the present case. This Court has previously stated that Rule 24(a)(2) provides a right to intervene "where (1) the movant has an interest relating to the property or transaction; (2) denying intervention would result in a practical impairment of the protection of that interest; and (3) there is inadequate representation of that interest by existing parties." *Alford v. Davis*, 131 N.C. App. 214, 218, 505 S.E.2d 917, 920 (1998). The movant bears the burden of demonstrating that these three requirements have been met. *Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 459, 515 S.E.2d 675, 683 (1999). We review *de novo* the trial court's decision denying intervention under Rule 24(a)(2). *Bailey & Assocs., Inc. v. Wilmington Bd. of Adjustment*, 202 N.C. App. 177, 185, 689 S.E.2d 576, 583 (2010).

CHARLES SCHWAB & CO. v. McENTEE

[225 N.C. App. 666 (2013)]

We conclude that the Association has failed to satisfy the third of the three requirements for intervention—namely, that its interests were not adequately represented by the personal representative in the interpleader action—and, accordingly, that the Association's motion for intervention as of right was properly denied. At the outset, we note that in the Will, Decedent expressly granted to his personal representative "all powers conferred on personal representatives and executors under Chapter 28A and Chapter 32 of the North Carolina General Statutes . . . to compromise and release claims with or without consideration." Chapter 28A of our General Statutes provides as follows:

> (a) Upon the death of any person, all demands whatsoever, and rights to prosecute or defend any action or special proceeding, existing in favor of or against such person, except as provided in subsection (b) hereof, shall survive to and against the personal representative or collector of the person's estate.

N.C. Gen. Stat. § 28A-18-1(a) (2011). Additionally, Chapter 28A confers the following powers upon the personal representative in prosecuting or defending an action on behalf of the decedent's estate:

> (a) Except as qualified by express limitations imposed in a will of the decedent or a court order, and subject to the provisions of G.S. 28A-13-6 respecting the powers of joint personal representatives, a personal representative has the power to perform in a reasonable and prudent manner every act which a reasonable and prudent person would perform incident to the collection, preservation, liquidation or distribution of a decedent's estate so as to accomplish the desired result of settling and distributing the decedent's estate in a safe, orderly, accurate and expeditious manner as provided by law, including the powers specified in the following subdivisions:
>
> . . . .
>
> (15) To compromise, adjust, arbitrate, sue on or defend, abandon, or otherwise deal with and *settle claims* in favor of or against the estate.

N.C. Gen. Stat. § 28A-13-3(a)(15) (2011) (emphasis added); *see also* James B. McLaughlin, Jr., & Richard T. Bowser, *Wiggins Wills and Administration of Estates in North Carolina*, § 20:8 (4th ed.) (2005)

("It is the duty of the personal representative to sue and defend suits on behalf of the estate, and such suits can be brought without joining the person or persons for whose benefit the action is prosecuted. The personal representative represents the beneficiaries . . . ."). Our General Statutes further provide that when a personal representative exercises these powers, he does so as a fiduciary:

> A personal representative is a fiduciary who, in addition to the specific duties stated in this Chapter, is under a general duty to settle the estate of the personal representative's decedent *as expeditiously ·and with as little sacrifice of value as is reasonable under all of the circumstances.* A personal representative shall use the authority and powers conferred upon the personal representative by this Chapter, by the terms of the will under which the personal representative is acting, by any order of court in proceedings to which the personal representative is party, and by the rules generally applicable to fiduciaries, for the best interests of all persons interested in the estate, and with due regard for their respective rights.

N.C. Gen. Stat. § 28A-13-2 (2011) (emphasis added).

The foregoing statutory provisions reflect our General Assembly's intent to promote orderly and efficient administration of the estate through the estate's personal representative, who essentially functions as a proxy for all persons interested in the estate, including each of the estate's beneficiaries.

In the instant case, the Association has not alleged facts which would indicate that its interest was not adequately represented by the personal representative, John McEntee. In his response to the Association's Motion to Intervene, John McEntee asserted that "[i]f this claim were litigated and lost, and if the litigation costs were paid from limited estate assets, there may be insufficient assets to settle creditors' claims." *See Farm ·Credit Bureau of Columbia v. Edwards,* 121 N.C. App. 72, 76, 464 S.E.2d 305, 307 (1995) (holding that personal representative had the authority to abandon an appeal of a judgment against estate where personal representative determined that the prosecution of the appeal would seriously erode the estate, even if the appeal were successful); *see also Hunter v. Newsom,* 121 N.C. App. 564, 567, 468 S.E.2d 802, 805 (1996) (explaining that a personal representative "[o]rdinarily . . . has the authority, in accomplishing

the expeditious settlement of a decedent's estate, to settle or compromise claims in favor of or against the estate, provided he acts honestly, reasonably and prudently"). It appears that the Association merely disagrees with the terms of Family Settlement Agreement. We cannot say that this, alone, is sufficient to demonstrate that the Association's interest was not adequately represented in the interpleader action. Because we conclude that the Association has failed to establish one of the three requirements necessary for intervention as of right under Rule 24(a)(2), we need not address the remaining requirements. *See Alford*, 131 N.C. App. at 219, 505 S.E.2d at 921. Accordingly, this contention is overruled.

### B. Permissive Intervention

**[3]** We further conclude that the trial court did not err in denying the Association's request for permissive intervention. Permissive intervention is governed by Rule 24(b) of the North Carolina Rules of Civil Procedure, which "contains specific requirements which control and limit intervention[.]" *State ex rel. Comm'r. of Ins. v. N.C. Rate Bureau*, 300 N.C. 460, 468, 269 S.E.2d 538, 543 (1980). Pursuant to Rule 24(b), a "third party may be *permitted* to intervene[,] . . . but only '(1) When a statute confers a conditional right to intervene; or (2) When an applicant's claim or defense and the main action have a question of law or fact in common.' " *Virmani*, 350 N.C. at 460, 515 S.E.2d at 683 (quoting N.C. Gen. Stat. § 1A-1, Rule 24(b)). The trial court's ruling on permissive intervention "will not be disturbed on appeal absent an abuse of discretion." *State ex rel. Long v. Interstate Cas. Ins. Comm'n.*, 106 N.C. App. 470, 474, 417 S.E.2d 296, 299 (1992). "An abuse of discretion occurs when the trial court's ruling 'is so arbitrary that it could not have been the result of a reasoned decision.' " *Chicora Country Club, Inc. v. Town of Erwin*, 128 N.C. App. 101, 109, 493 S.E.2d 797, 802 (1997) (citation omitted). "Our trial courts should bear in mind, however, that Rule 24(b)(2) expressly requires that in exercising discretion as to whether to allow permissive intervention, 'the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.' " *Virmani*, 350 N.C. at 460, 515 S.E.2d at 683 (quoting N.C. Gen. Stat. § 1A-1, Rule 24(b)).

Here, as discussed *supra*, the trial court could properly conclude that the Association's interest in the interpleader action was adequately represented by John McEntee, acting in his capacity as personal representative of the Estate. Permitting intervention under the circumstances might have eradicated the Family Settlement Agree-

ment and delayed adjudication of the rights of the Named Parties, potentially to the detriment of the creditors and other beneficiaries of the Estate. Thus, we cannot say that the trial court's denial of the Association's Motion to Intervene was "so arbitrary that it could not have been the result of a reasoned decision." *See Virmani*, 350 N.C. at 460, 515 S.E.2d at 683 (holding that the trial court did not abuse its discretion in denying intervention where the court had "every reason . . . to believe that permitting the [applicant] to intervene would . . . unduly delay the adjudication of the rights of the original parties"); *State ex rel. Long*, 106 N.C. at 474, 417 S.E.2d at 299 (holding no abuse of discretion where intervention would have "unduly delay[ed] and prejudice[d] the adjudication of the rights of the original parties"). This argument is overruled.

## IV. Conclusion

Because we have concluded that the trial court did not err in denying the Association's Motion to Intervene, we need not address the Association's contention that the Family Settlement Agreement be set aside. *See Ward v. Taylor*, 68 N.C. App. 74, 80, 314 S.E.2d 814, 820 (1984) ("The general rule is that only a party or his legal representative has standing to have an order set aside, and that a stranger to the action may not obtain such relief.") The trial court's order denying intervention is hereby

AFFIRMED.

Chief Judge MARTIN and Judge ERVIN concur.