BEAUFORT COUNTY SCHOOLS, Appellee v. JANET ROACH, Appellant

No. 922SC1117

(Filed 19 April 1994)

1. **Schools § 113 (NCI4th)— child with special needs—free appropriate public education—duty of system to develop individualized educational plan**

    The trial court erred in determining that respondent was under no legal obligation to fully develop an Individualized Educational Program for petitioner's daughter, to present an IEP to petitioner upon request, and to present respondent's proposals in writing to petitioner, regardless of petitioner's request, since it was undisputed that respondent was a local educational agency, petitioner was a resident of respondent's

district, and petitioner's child was determined to be a child with special needs. N.C.G.S. § 115C-113; 20 U.S.C. § 1400.

**Am Jur 2d, Schools §§ 298 et seq.**

**Requisite conditions and appropriate factors affecting educational placement of handicapped children. 23 ALR4th 740.**

2. **Schools § 227 (NCI4th)— child with special needs—free appropriate public education—no failure by school system to provide**

There was no evidence to support a finding or conclusion that respondent failed in its statutory duty to provide a free appropriate education for petitioner's child who had been determined to be a child with special needs, since the precipitating factor which led to a breakdown in respondent's following the procedure outlined by N.C.G.S. Article 9, Chapter 115C and the federal regulations for the "Education for All Handicapped Children Act of 1975" for providing the child with a free appropriate public education was petitioner's own act of placing the child in another school system.

**Am Jur 2d, Schools §§ 298 et seq.**

**Requisite conditions and appropriate factors affecting educational placement of handicapped children. 23 ALR4th 740.**

Appeal by Petitioner Janet Roach from order entered 8 May 1992 by Judge W. Russell Duke, Jr. in Beaufort County Superior Court. Heard in the Court of Appeals 6 October 1993.

On 26 September 1989, Petitioner Janet Roach filed a petition for a contested case hearing in the Office of Administrative Hearings against Respondent Beaufort County Schools ("BCS") alleging that Beaufort County Schools had "failed to provide a free appropriate public education for [her] daughter, Ginger Goforth" pursuant to Article 9 of Chapter 115C of the North Carolina General Statutes. Following a hearing, the Administrative Law Judge on 25 July 1990 filed his recommended decision finding that BCS had "not properly offered or provided an appropriate education for Ginger" and ordered BCS to provide Ginger Goforth with an appropriate education and reimburse petitioner for reasonable private placement costs from 22 February 1989 until the time BCS provides such education. On 26 September 1990, the State Board of Educa-

tion, which was the agency given the authority to make the final decision in an action brought pursuant to N.C. Gen. Stat. § 115C-116 and Article 3 of Chapter 150B prior to 1 October 1990, filed its final decision in this action adopting the findings of fact and conclusions of law made by the administrative law judge in his recommended decision.

BCS filed a petition for judicial review of this decision in Beaufort County Superior Court pursuant to Article 4 of Chapter 150B. After making additional findings of fact, on 8 May 1992, Judge W. Russell Duke, Jr. entered an order reversing the decision of the State Board of Education. From this order, petitioner appeals.

*Lee E. Knott, Jr. for appellee Beaufort County Schools.*

*Governor's Advocacy Council for Persons with Disabilities, by Judy J. Burke, Augustus B. Elkins, II and Barbara A. Jackson, for appellant.*

ORR, Judge.

The issue presented by this appeal is whether the trial court erred in reversing the decision of the State Board of Education concluding that BCS failed to provide a free appropriate education for petitioner's daughter, Ginger Goforth, who is a behaviorally-emotionally handicapped ("BEH") child.

This case was first heard by an Administrative Law Judge ("ALJ") who made the following findings of fact: In August of 1987, Ginger Goforth was enrolled in the BCS system at Bath High School and placed in a self-contained BEH class. In October of 1987, following a violent episode, petitioner committed Ginger to Brynn Marr Hospital with the help of the Tideland Mental Health Center. On 9 December 1987, Ginger was moved directly from Brynn Marr to The Whitaker School, a school in Granville County for children who exhibit behavior that could be considered dangerous to themselves or others. In late 1988, The Whitaker School determined that Ginger's discharge was necessary and convened a community planning conference for 5 January 1989.

The principal of Bath High School and the Program Administrator for Exceptional Children Programs of BCS, Rosa Beamon, both attended this meeting. At this meeting, the principal expressed his opinion that because of Ginger's previous violent behavior at Bath High School in 1987, it would not be a good idea to return

her to this school. Beamon stated that BCS could provide home-bound services for Ginger. A teacher and a unit supervisor of The Whitaker School expressed their opinions, however, that a self-contained BEH class or day treatment, with group placement as a back-up, would be a less restrictive way to meet Ginger's needs.

On 22 February 1989, The Whitaker School discharged Ginger, and she returned to Beaufort County. On 1 March 1989, Rosa Beamon mailed out notices of a meeting of the School Based Committee to be held 6 March 1989 for the purpose of planning Ginger's placement. Although informed of this meeting, petitioner did not attend.

At this meeting, "[i]t was decided by those present that when and if the Petitioner contacted the school to enroll Ginger that it be suggested that she have Homebound Services or limited time at school with a teacher assistant and much support from the Tideland Mental Health Center. No [Individualized Educational Program ("IEP")] for Ginger was developed at this meeting." On 27 March 1989, the School Based Committee held another meeting.

The petitioner appeared at this meeting along with a repre-sentative from The Governor's Advocacy Council, and petitioner "was advised that a teacher assistant had been employed by [BCS] to work with Ginger on her return to Bath High School in a BEH self-contained classroom setting." Petitioner stated that she did not want Ginger at home. Also at this meeting, BCS began prepar-ing an IEP for Ginger.

During this process, on 10 April 1989, without giving prior notice to BCS, petitioner placed Ginger in NOVA, a private residen-tial treatment center in Lenoir County. At NOVA, Ginger's teacher was provided by the Lenoir County Schools. BCS did not thereafter complete the IEP.

Subsequently, funding by Tideland Mental Health Center for Ginger to attend NOVA was to run through September, 1989, and on 15 August 1989, the Tideland Mental Health Center called a meeting to discuss the fact that funding for Ginger's placement at NOVA was ending. Rosa Beamon and Dan Winslow, School Psychologist for BCS, attended this meeting. At the meeting, Beamon reported that BCS could provide education but not treatment for Ginger. She stated that BCS' program would consist of a resource or full-time BEH placement depending on Ginger's need and a full-

time teacher assistant at Northside High School. As found by the ALJ, "[s]hortly after this meeting the petition for a contested case hearing was filed[,] and Ginger has remained at NOVA."

Based on these facts, the ALJ concluded that BCS failed to provide a free appropriate education for Ginger Goforth "by not fully developing an IEP and presenting it in writing to Petitioner along with her procedural rights and safeguards as required" and recommended that BCS provide an appropriate education for Ginger and "reimburse Petitioner for reasonable private placement costs from February 22, 1989, until it does so." Subsequently, the State Board of Education adopted the findings and conclusions of the ALJ.

On petition for judicial review, the trial court found, however, that BCS "had no legal obligation to fully develope [sic] an IEP for Ginger Goforth and present it to the [petitioner] along with her procedural rights and safeguards," that there was "no substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted within the meaning of G.S. 150B-51(b)(5) to support a finding of fact that [BCS had] not properly offered or provided an appropriate education for Ginger Goforth," and reversed the Board's decision. On appeal, petitioner contends that the trial court erred in its finding that BCS was under no legal obligation to fully develop an IEP for Ginger and present it to petitioner and that the trial court exceeded its scope of review by making additional findings of fact not contained in the final decision of the Board and reversing the Board's decision.

Our standard of review over an agency's decision is governed by N.C. Gen. Stat. § 150B-51(b), "the same scope of review utilized by superior courts." *Clay v. Employment Security Commission of N.C.*, 111 N.C. App. 599, 602, 432 S.E.2d 873, 875 (1993), *disc. review allowed*, 335 N.C. 553, --- S.E.2d --- (1994); *Jarrett v. N.C. Dep't of Cultural Resources*, 101 N.C. App. 475, 478, 400 S.E.2d 66, 68 (1991).

Under N.C. Gen. Stat. § 150B-51(b) (1991), a court may "reverse or modify the agency's decision if the substantial rights of the petitioners may have been prejudiced . . . ." Petitioner's rights may have been prejudiced under the statute if the agency's findings, inferences, conclusions, or decisions are:

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary or capricious.

N.C. Gen. Stat. § 150B-51(b) (1991).

"Agency findings of fact are conclusive if, upon review of the whole record, they are supported by competent, material, and substantial evidence." *In re Humana Hosp. Corp. v. North Carolina Dep't of Human Resources*, 81 N.C. App. 628, 633, 345 S.E.2d 235, 238 (1986). "[T]he Superior Court is without authority to make findings at variance with the findings of the [agency] when the findings of the [agency] are supported by competent, material and substantial evidence." *In re Appeal of Amp, Inc.*, 287 N.C. 547, 561, 215 S.E.2d 752, 761 (1975). However, "[w]here the reviewing court determines that the findings of the agency are not supported by substantial evidence, the [C]ourt may make findings at variance with those of the agency." *Scroggs v. North Carolina Criminal Justice Educ. and Training Standards Comm'n*, 101 N.C. App. 699, 702-03, 400 S.E.2d 742, 745 (1991).

[1] First we must determine whether the trial court erred in finding that BCS was under no legal obligation to fully develop an IEP for Ginger. The federal "Education for All Handicapped Children Act of 1975" (the "EHCA"), 20 U.S.C. § 1400, et seq., which Act is now entitled "Individuals with Disabilities Education Act," was enacted to promote the education of children with special needs. Specifically, the EHCA creates a state grant program to aid states in educating handicapped children. The EHCA requires all states receiving funds under this Act to provide a "free appropriate public education" for all children with disabilities in the state. 20 U.S.C. § 1412.

North Carolina receives funds under the EHCA and is, therefore, required to provide a free appropriate public education to children with disabilities living in the State. Article 9 of Chapter 115C of the North Carolina General Statutes ("Article 9") establishes policies in accordance with the EHCA to provide this education. Article 9 states, "[e]ach local educational agency shall provide free appropriate special education and related services in accordance

with the provisions of this Article for all children with special needs who are residents of, or whose parents or guardians are residents of, the agency's district, beginning with children aged five." N.C. Gen. Stat. § 115C-110(i).

In the present case, the issue before us is whether the trial court erred in reversing the Board's decision that BCS failed to provide Ginger with a free appropriate education since her release from The Whitaker School on 22 February 1989.

On 22 February 1989, N.C. Gen. Stat. § 115C-113(c) (1987) stated that once a child is referred for diagnosis and evaluation,

> [w]ithin 30 days of such referral, the local educational agency shall send a written notice to the parents or guardian describing the evaluation procedure to be followed and requesting consent for the evaluation. If the parents or guardian consent, the diagnosis and evaluation may be undertaken; if they do not, the local educational agency may obtain a due process hearing on the failure of the parent to consent under G.S. 115C-116.
>
> The local educational agency shall provide or cause to be provided a diagnosis and evaluation appropriate to the needs of the child within 30 calendar days after sending the notice unless the parents or guardian have objected to such evaluation. At the end of such diagnosis and evaluation, the local educational agency shall offer a proposal for an educational program appropriate to the child's needs. If this proposal calls for a special educational program, it shall set forth the specific benefits expected from such a program, a method for monitoring the benefits, and a statement regarding conditions which will be considered indicative of the child's readiness for participation in regular classes.

Further, at the time of Ginger's release from The Whitaker School, N.C. Gen. Stat. § 115C-113(f) (1987) stated:

> Each local educational agency shall prepare individualized educational programs for all children found to be children with special needs . . . . The individualized educational program shall be developed in conformity with Public Law 94-142 and the implementing regulations issued by the United States Department of Education and shall be implemented in conformity with timeliness set by that Department.

Public-Law 94-142 was codified into the EHCA. At the time of Ginger's release from The Whitaker School, the federal regulations for the EHCA pertaining to the preparation and implementation of an IEP stated:

(b) An individualized education program must:

(1) Be in effect before special education and related services are provided to a child; and

(2) Be implemented as soon as possible following the meetings under § 300.343.

34 C.F.R. § 300.342(b). Under 34 C.F.R. § 300.343, "[e]ach public agency is responsible for initiating and conducting meetings for the purpose of developing, reviewing, and revising a handicapped child's [IEP]." 34 C.F.R. § 300.343(a). "[A] meeting must be held within thirty calendar days of a determination that the child needs special education and related services." 34 C.F.R. § 300.343(c).

"Each public agency shall take steps to insure that one or both of the parents of the handicapped child are present at each meeting or are afforded the opportunity to participate, including:" notifying parents of the meeting and scheduling meetings at a mutually agreed upon time and place. 34 C.F.R. § 300.345(a). "A meeting may be conducted without a parent in attendance if the public agency is unable to convince the parents that they should attend." 34 C.F.R. § 300.345(d). Further, "[t]he public agency shall give the parent, on request, a copy of the [IEP]." 34 C.F.R. § 300.345(f); See also N.C. Gen. Stat. § 115C-113(d) (1987) ("local educational agency shall furnish the results, findings, and proposals based on the diagnosis and evaluation to the parents or guardian in writing . . . .").

Our review of the applicable provisions of Article 9 and the EHCA and its regulations in effect at the time of Ginger's release from The Whitaker School shows no provision whereby a local educational agency is relieved of its duty to create an IEP for a child whose parents reside in the agency's district once that child has been determined to be a child with special needs. In the present case, it is undisputed that BCS is a "local educational agency" and that petitioner, the parent of Ginger, is a resident of BCS' district. It is also undisputed that at the time of Ginger's release from The Whitaker School on 22 February 1989, Ginger had been determined to be a child with special needs. Thus, based

on our reading of the statute and federal regulations, BCS had a legal obligation to fully develop an IEP for Ginger following her release from The Whitaker School, to present the IEP to petitioner upon petitioner's request, and to present BCS's proposals in writing to petitioner, regardless of petitioner's request; the trial court erred, therefore, in its finding that BCS was under no legal obligation to do so.

[2]   The determination that BCS had a duty to fully develop an IEP for Ginger and that BCS failed to do so is not, however, dispositive of this case. The failure to fully develop an IEP does not necessarily constitute a failure to provide a free appropriate education under the statute or the EHCA.

The facts of this case as found by the ALJ and adopted by the Board show that Ginger was released from The Whitaker School on 22 February 1989. The Board found that before the expiration of thirty days, on 1 March 1989, BCS informed petitioner that it was going to hold a meeting on 6 March 1989 to determine Ginger's educational needs; petitioner chose, however, not to attend. Then on 27 March 1989, BCS held another meeting which petitioner did attend. At this meeting, BCS began to create an IEP for Ginger with petitioner. Before BCS completed the IEP, however, on 10 April 1989, petitioner chose to enroll Ginger in NOVA, a private residential treatment center in Kinston, N.C., where, according to the evidence, Lenoir County School System developed an IEP for Ginger, and BCS, therefore, stopped preparing an IEP for her. Petitioner's act of placing Ginger in NOVA effectively prevented BCS from implementing an IEP for Ginger "as soon as possible."

Subsequently, on 15 August 1989, Tideland Mental Health Center called a meeting to discuss the fact that Ginger's funding at NOVA was running out. At this time, N.C. Gen. Stat. § 115C-113(c) had been amended effective 21 June 1989, which provision is still in effect and states that once a child is referred for diagnosis and evaluation,

> [t]he local educational agency shall provide or cause to be provided, as soon as possible after receiving consent for evaluation, a diagnosis and evaluation appropriate to the needs of the child unless the parents or guardian have objected to such evaluation. If at the conclusion of the evaluation, the child is determined to be a child with special needs, the local

educational agency shall within 30 calendar days convene an [IEP] committee. The purpose of the meeting shall be to propose the special education and related services for the child. . . . The proposal shall set forth the specific benefits expected from such a program, a method for monitoring the benefits, and a statement regarding conditions which will be considered indicative of the child's readiness for participation in regular classes.

After an initial referral is made, the provision of special education and related services shall be implemented within 90 calendar days to eligible students, unless the parents or guardian refuse to consent to evaluation or placement or the parent or local educational agency requests a due process hearing.

Further, N.C. Gen. Stat. § 115C-113(d) was amended effective 21 June 1989, which provision is still in effect, and states,

[t]he local educational agency shall furnish the results, findings, and proposals, as described in the [IEP] or group educational program based on the diagnosis and evaluation to the parents or guardian in writing . . . prior to the parent or guardian giving consent for initial placement in special education and related services.

In the present case, as found by the Board, Rosa Beamon and a School Psychologist for BCS were invited to and attended the meeting of 15 August 1989 called by Tideland Mental Health Center. When asked what type of education BCS could provide for Ginger, Beamon stated that "the Beaufort County Schools program would consist of a resource or full-time BEH placement *depending on Ginger's need* and a full-time teacher assistant at Northside High School." (Emphasis added.) "Shortly after this meeting the petition for a contested case hearing [in which petitioner alleged that BCS had failed to provide a free appropriate public education for Ginger] was filed and Ginger has remained at NOVA."

Our review of the amendments to Article 9 again shows no provision whereby a local educational agency is relieved of its duty to create an IEP for a child whose parents reside in the agency's district once that child has been determined to be a child with special needs. Thus, BCS was still under the obligation to fully develop an IEP for Ginger but with additional time constraints.

Under Article 9 as amended, once a child has been referred for a diagnosis and evaluation, the local educational agency shall, "as soon as possible after receiving consent for evaluation," provide or cause to be provided a diagnosis and evaluation of the child. N.C. Gen. Stat. § 115C-113(c) (1991). If the child is determined to be a child with special needs, the local educational agency is to convene an IEP committee within thirty calendar days after such determination. N.C. Gen. Stat. § 115C-113(c) (1991). The local educational agency is to develop an IEP, furnish the results as described in the IEP to the child's parent or guardian in writing, and implement the special education and related services within ninety calendar days from the initial referral. N.C. Gen. Stat. § 115C-113(c), (d) and (f) (1991).

Our review of the evidence shows that BCS followed the correct procedure to provide Ginger with a free appropriate education upon her release from The Whitaker School. The process for providing Ginger with a free appropriate education was, however, interrupted by petitioner's act of placing Ginger into another school. Further, at the time Tideland Mental Health Center called the meeting to discuss the fact that Ginger's funding to attend NOVA was ending, Ginger was still enrolled at NOVA as a student, and the Board made no findings as to whether petitioner contacted BCS again after this meeting before filing this action.

Based on these facts, we conclude that there is no evidence to support a finding or conclusion that BCS failed to provide a free appropriate education. Although the record reveals subsequent discussion among the parties as funding for NOVA ran out, it is not clear from the record or issues presented that any subsequent acts of BCS constituted a failure to provide a free appropriate education.

Thus, the precipitating factor that led to a breakdown of BCS following the procedure outlined by Article 9 and the federal regulations for the EHCA for providing Ginger with a free appropriate education was petitioner's own act of placing Ginger into another school system. Based on our review of the facts as found by the Board and as supported by sufficient and competent evidence, we conclude that insufficient evidence exists to support the Board's conclusion that BCS failed to provide a free appropriate education for Ginger.

Accordingly, insofar as the trial court reversed the Board's conclusion that BCS failed to provide a free appropriate education for Ginger, we affirm the order of the trial court. Insofar as the trial court concluded that BCS was under no legal obligation to prepare an IEP for Ginger and present it to petitioner, however, we reverse the order of the trial court and remand this case for entry of an order requiring BCS to prepare an IEP for Ginger, to present the results of the IEP to petitioner pursuant to the provisions of Article 9, and to implement that IEP within 90 calendar days absent one of the factors listed in G.S. 115C-113(c) taking place.

Affirmed in part, reversed and remanded in part.

Judges EAGLES and GREENE concur.