HOLLY RIDGE ASSOCIATES, LLC, Petitioner v. NORTH CAROLINA DEPARTMENT OF ENVIRONMENT AND NATURAL RESOURCES AND ITS DIVISION OF LAND RESOURCES; WILLIAM P. HOLMAN, in his official capacity; and CHARLES H. GARDNER, in his official capacity, Respondents, and NORTH CAROLINA SHELL-FISH GROWERS ASSOCIATION and NORTH CAROLINA COASTAL FEDERA-TION, Intervenor-Respondents

No. COA03-1686

(Filed 21 March 2006)

**1. Administrative Law— intervention—direct interests of intervenors**

An administrative law judge did not err by allowing the Shellfish Growers and the Coastal Federation to intervene in a contested case involving a monetary penalty for erosion and sedimentation violations. The intervenors' interests may be directly affected by the outcome of the case, and are separate from erosion penalties, because conclusive findings indicate that sedimentation affects the waters which their members visit and from which they take fish and shellfish. N.C.G.S. § 150B-23(d).

**2. Administrative Law— contentions first raised in superior court—not properly brought forward**

Contentions on appeal of an administrative law judge's decision that were first raised in the superior court brief were not properly brought forward.

**3. Appeal and Error— no authority cited—argument abandoned**

Arguments concerning an administrative law judge's handling of discovery were deemed abandoned where no authority was cited for the arguments.

**4. Administrative Law— discovery responses supplemented—no surprise—no abuse of discretion**

An administrative law judge did not err by allowing respondents to supplement discovery responses four days prior to trial and then denying a motion for a continuance. The applicable statute and rules gave authority for the action, and there was no abuse of discretion. Respondent was not asserting a new theory that unfairly surprised petitioner.

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

**5. Administrative Law— joint presentation of case—stipulation and participation without objection**

Petitioner waived any objection to respondent and intervenors making a joint presentation of their case through a stipulation and by participating in the hearing for three days without complaint.

**6. Administrative Law— evidentiary standard—substantial evidence—greater weight of evidence—no conflict**

There is no conflict between the application of an evidentiary standard requiring that a decision be based on substantial evidence and a requirement that a party must persuade the factfinder by the greater weight of the evidence. Although petitioner here argues that the ALJ improperly applied the "substantial evidence" standard, the ALJ considered and carefully weighed the evidence.

**7. Administrative Law— burden of proof—agency action outside authority**

Unless a statute provides otherwise, the petitioner has the burden of proof in OAH contested cases. Although the petitioner here argues that N.C.G.S. § 113A-64(a)(1) allocates the burden of proof in this case to respondent, petitioner's contention that the Sedimentation Pollution Control Act was inapplicable on its site falls under its burden of showing that an agency acted outside its authority.

**8. Environmental Law— sedimentation and erosion—forestry exemption**

The forestry exemption in the Sedimentation Pollution Control Act applies, on its face, to activities specifically undertaken for the production and harvesting of timber and timber products, not to drainage activities for other purposes. A superior court conclusion that activities to generally improve drainage do not qualify for the exemption was not error.

**9. Administrative Law— agency memoranda—not enforceable as rules—substantial compliance**

An administrative law judge did not err by concluding that respondent was not required to follow interagency memoranda on forestry operations where the memoranda described internal agency procedures, were not enforceable as rules, and were substantially complied with.

Judge JACKSON dissenting.

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

Appeal by petitioner from order entered 5 September 2003 by Judge Benjamin G. Alford in Superior Court in New Hanover County. Heard in the Court of Appeals 21 March 2005.

> *Attorney General Roy Cooper, by Senior Deputy Attorney General James C. Gulick and Assistant Attorney General Margaret P. Eagles, for respondent-appellees.*
>
> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by George W. House, and Hunton & Williams, by Craig A. Bromby, for petitioner-appellant.*
>
> *Southern Environmental Law Center, by Donnell Van Noppen, III, and Amy Pickle, for intervenor-respondent-appellees.*

HUDSON, Judge.

On 5 March 2000, the Department of Environment and Natural Resources ("DENR") assessed a civil penalty against petitioner Holly Ridge Associates ("HRA") for an alleged violation of the Sedimentation Pollution Control Act ("SPCA"), N.C. Gen. Stat. § 113A-50 *et seq.* (1999). HRA disputed the penalty and filed a contested case petition on 3 April 2000. In October 2000, the North Carolina Shellfish Growers Association ("Shellfish Growers") and the North Carolina Coastal Federation ("Coastal Federation") moved to intervene. In November 2000, the Administrative Law Judge ("ALJ") granted the motion to intervene, over HRA's objection. On 20 December 2001, the ALJ affirmed a reduced penalty and on 29 April 2002, DENR adopted the ALJ's recommended decision as its final agency decision. HRA appealed in Superior Court in New Hanover County. On 5 September 2003, the court affirmed DENR's final agency decision. HRA appeals. For the reasons discussed below, we affirm.

This case involves 1262 acres of land in Onslow County owned by HRA ("the tract"). The tract fronts on and adjoins the Atlantic Intracoastal Waterway ("AIWW") near Stump Sound. The tract drains directly to the AIWW and to Cypress Branch, a stream that forms the southern boundary of much of the tract. Cypress Branch, a perennial stream and tributary of Batts Mill Creek, flows into the AIWW. The tract, which is located on the mainland across the AIWW and Stump Sound from the resort community of Topsail Island, is largely forested and contains substantial wetlands acreage.

During the 1950's, Edgar Yow assembled the tract and owned a 50% interest, with the remaining interest divided equally between two

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

other individuals. During the 1960's and 70's, the owners constructed a lake on the property and converted some of the agricultural fields to forest. Small stands of timber were cut, some to clear land for the lake, and proceeds from the timber harvesting were used to pay for the lake and dam construction, as well as for property taxes and other expenses associated with owning the land.

In 1983, Westminster Company, a Weyerhauser subsidiary devoted to developing residential subdivisions, purchased the tract. In 1986, Lionel Yow (Edgar Yow's son), Henry E. Miller, Jr., and Weyerhauser entered into a joint venture agreement to acquire the tract and "maintain[], operat[e], and develop[] thereon a resort residential community." The joint venturers formed HRA, a partnership, "to acquire, manage, maintain and develop" the tract. In 1986, HRA had development layouts prepared for the tract, depicting potential residential and recreational development of the entire tract. HRA used the layouts as a sales tool with prospective buyers. Mr. Yow participated in numerous other development projects in nearby coastal communities during the late 1980's and early 1990's. In 1995, he requested that an engineering firm send copies of the 1986 development drawings to a potential buyer. In 1996, Hurricanes Bertha and Fran struck the North Carolina coast in the vicinity of the tract, damaging timber and washing out unpaved roads on the property. At the suggestion of Corbett Lumber Company, HRA engaged Corbett to remove damaged timber from the tract in 1997.

In May 1997, HRA hired regulatory and environmental consultants to plan and execute a ditch excavation project. Neither consultant had any forestry experience and did not provide clients with advice or expertise concerning timber management. By November 1998, the tract had 17 major ditches or systems of ditches, comprising approximately 8 miles over a 34-acre area.

In February 1999, after receiving a report of potential violations from the North Carolina Division of Water Quality, two Division of Land Resources ("DLR") employees inspected the tract. They found numerous violations of the SPCA, including inadequate erosion control devices for the steep ditches. On 3 March 1999, DENR issued a notice of violation of the SPCA. The NOV specified corrective actions necessary to bring the tract into compliance and warned that civil penalties could be assessed if the violations were not corrected within 30 days. On 23 April 1999, DLR returned to the site for a follow-up inspection and observed the same violations as before. DENR issued a notice of continuing violations on 28 April 1999. On 9 July

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

1999, having still received no submission of the required and previously requested erosion and sedimentation control plan, and having received no notice from HRA that the other violations had been corrected, DENR assessed a penalty of $32,100 for the following violations: failure to submit an erosion and sedimentation control plan for the project, failure to take reasonable measures to protect from damage by land-disturbing activities (not taking measures to control erosion and retain sediment), exposed slopes too steep to maintain ground cover and without other adequate erosion control devices, and failure within fifteen days of grading to have ground cover or other sufficient erosion control devices.

Thereafter, HRA submitted an erosion and sedimentation control plan which was ultimately disapproved due to deficiencies. On 10 November 1999, after another inspection, DENR sent HRA a notice of additional violations, which described new, as well as continuing, violations. After another inspection, DENR sent HRA a notice of continuing violations on 5 January 2000, as the earlier violations had not been corrected. On 5 March 2000, DENR assessed further civil penalties totaling $118,000 for violations of the SPCA. In its contested case petition, HRA claimed that its activities were exempt from the SPCA pursuant to a forestry exception. N.C. Gen. Stat. § 113A-52.01 (1999). Before, during and after the excavation and agency enforcement process, HRA had not claimed that the ditching was being carried out for forestry purposes; it made this assertion for the first time in its petition for contested case hearing.

The North Carolina Administrative Procedure Act ("APA") applies to this case. *See, e.g., Watkins v. N.C. State Bd. of Dental Exam'rs*, 358 N.C. 190, 199, 593 S.E.2d 764, 769 (2004). Because the petition in this case was filed in April 2000, and the subsequent amendments to the APA apply only to cases commenced on or after 1 January 2001, the "old" APA governs review of this case. 2000 Sess. Law 190, Section 14.

On review of a trial court's order affirming a decision by an administrative agency, our scope of review is the same as it is for other civil cases. *Henderson v. N.C. Dep't of Human Resources*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 899 (1988). We must examine the trial court's order for error of law and determine whether the trial court exercised the appropriate scope of review and whether the trial court properly applied this standard. *Amanini v. N.C. Dep't of Human Resources*, 114 N.C. App. 668, 674, 443 S.E.2d 114, 118 (1994).

**HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.**

[176 N.C. App. 594 (2006)]

The nature of the error asserted determines the appropriate manner of review; where appellant contends legal error in the agency's decision, the trial court must review *de novo. Dillingham v. N.C. Dep't of Human Resources*, 132 N.C. App. 704, 708, 513 S.E.2d 823, 826 (1999). If the appeal questions whether the agency's decision was supported by the evidence, was arbitrary and capricious or was the result of an abuse of discretion, the reviewing court must apply the "whole record" test. *Id.* "The 'whole record' test requires the reviewing court to examine all competent evidence (the 'whole record') in order to determine whether the agency decision is supported by 'substantial evidence.' " *Amanini*, 114 N.C. App. at 674, 443 S.E.2d at 118. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State ex rel. Comm'r of Ins. v. N.C. Fire Ins. Rating Bureau*, 292 N.C. 70, 80, 231 S.E.2d 882, 888 (1977). "The 'whole record' test does not allow the reviewing court to replace the [agency]'s judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo." Thompson v. Wake County Bd. of Educ.*, 292 N.C. 406, 410, 233 S.E.2d 538, 541 (1977).

[1] HRA first argues that it was legal error for the ALJ to allow the Shellfish Growers and the Coastal Federation to intervene. We disagree.

As HRA contends legal error, we conclude that the superior court correctly chose to apply a *de novo* standard of review. Thus, we must determine whether the court did so properly. HRA argues that there are three requirements for intervening as a party here: standing, Office of Administrative Hearings ("OAH") Rule 3.0117, and Civil Procedure Rule 24. As our legislature has provided explicit statutory provisions governing intervention in a contested case petition, we conclude that this case must be analyzed pursuant to these provisions, rather than under the more general rules governing civil procedure. "The Rules of Civil Procedure as contained in G.S. 1A-1 . . . shall apply in contested cases in the Office of Administrative Hearings (OAH) *unless another specific statute or rule of the Office of Administrative Hearings provides otherwise.*" 26 N.C.A.C. 3.0101 () (emphasis added). N.C. Gen. Stat. § 150B-23(d) (1999) governs intervention in a contested case petition:

Any person may petition to become a party by filing a motion to intervene in the manner provided in G.S. 1A-1, Rule 24. In addi-

600 IN THE COURT OF APPEALS

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

*tion, any person interested in a contested case may intervene
and participate in that proceeding to the extent deemed appro-
priate by the administrative law judge.*

*Id.* The N.C. Supreme Court has interpreted N.C. Gen. Stat. § 150B-23(d)
as granting "discretionary intervention [] without limitation . . .
and . . . provid[ing] intervention broader than the permissive inter-
vention under Rule 24." *State ex rel. Comm'r of Ins. v. North
Carolina Rate Bureau*, 300 N.C. 460, 468, 269 S.E.2d 538, 543 (1980).

HRA propounds a strained interpretation of N.C. Gen. Stat.
§ 150B-23(d), asserting that the first and second sentences of the
statute should be read separately and that the discretion of the sec-
ond sentence applies only to persons intervening with rights less than
those of non-parties, but not to persons who intervene as a "party"
under the first sentence. Here, intervenors were granted intervention
as parties. HRA contends that those intervening as parties, under the
first sentence of the statute, are subject to the all of the requirements
of Rule 24. We find nothing in the plain language of the statute to sug-
gest that our legislature intended such a reading. Although the first
sentence mentions Rule 24, it states only that parties must file "in the
manner" of Rule 24, which plainly refers to procedural, not substan-
tive, requirements. As the Court did in *State ex rel. Comm'r of Ins. v.
North Carolina Rate Bureau*, we conclude that the plain language of
§ 150B-23(d) gives OAH broad discretion to allow intervention.

However, while discretionary intervention under section
150B-23(d) is broader than that under Rule 24, OAH Rule 3.0117
imposes requirements for intervention in contested cases similar
to those in Rule 24, including the following provisions:

(a) Any person not named in the notice of hearing who desires to
intervene in a contested case as a party shall file a timely motion
to intervene and shall serve the motion upon all existing parties.
Timeliness will be determined by the administrative law judge in
each case based on circumstances at the time of filing. The
motion *shall show how the movant's rights, duties, or privileges
may be determined or affected by the contested case; shall show
how the movant may be directly affected by the outcome . . .*

(d) The administrative law judge *shall allow intervention upon
a proper showing under this Rule, unless the administrative
law judge finds that the movant's interest is adequately repre-
sented by one or more parties participating in the case . . .*

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

26 N.C.A.C. 3.0117 (1999) (emphasis added). HRA asserts that intervenors' interests are no more than "an interest common to all persons," and are not separate from the interests of DENR. HRA also argues that intervenors have no interest in a civil penalty assessment against it. But as HRA claimed exemption from the erosion control requirements of the SPCA in its contested case petition, the issue of whether HRA would be exempt from SPCA was also at issue here. Indeed, in their motion to intervene, intervenors stressed that the important issue to them was whether HRA would qualify for the forestry exemption of the SPCA. The superior court found that the following findings made in the recommended decision adequately described the intervening parties:

3. The Respondent-Intervenor North Carolina Shellfish Growers Association ("NCSGA") is a private, non-profit association founded in 1995 to represent the interests of the many North Carolinians involved in the shellfish industry. NSCGA has 82 members who include shellfish farmers, hatchery operators, seafood dealers, educators and researchers. *Members of NCSGA own and maintain shellfish production leases in Stump Sound and surrounding coastal waters, including in the vicinity of the Holly Ridge tract. Jim Swartzenberg, President of NCSGA, along with his wife, Bonnie, leases 37 acres of waters in Stump Sound for oyster production and assists in management and production of oysters from over 100 additional acres in Stump Sound.* (Affidavit of Jim Swartzenberg, submitted with Motion to Intervene). NCSGA is a plaintiff in a federal lawsuit against HRA arising out of the same facts and circumstances as this matter.

4. Respondent-Intervenor North Carolina Coastal Federation is a non-profit tax-exempt organization dedicated to the promotion of better stewardship of coastal resources. The Coastal Federation was founded in 1982 and *has approximately 5,000 members who live near, shellfish or fish in, or regularly visit, Stump Sound and nearby coastal waters.* The Coastal Federation has worked to protect water quality in Stump Sound and in the vicinity of the Holly Ridge tract and has investigated, documented, publicized, and sought government enforcement of violations of state and federal sedimentation, stormwater, water quality, and wetlands laws in connection with ditch excavation which occurred in southeastern North Carolina during 1998 and 1999, including at the Morris Landing tract. (Affidavit of Todd Miller).

602  IN THE COURT OF APPEALS

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

(emphasis added). These findings, and the superior court's decision to adopt them, were not challenged on appeal and thus are conclusive. *Walker v. N.C. Dep't of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990), *cert. denied*, 328 N.C. 98, 402 S.E.2d 430 (1991). Furthermore, in his affidavit which was submitted with the motion to intervene, Jim Swartzenberg, president of Shellfish Growers, stated the following:

> 10. Ditching and draining of tracts of land located in close proximity to shellfish waters can, if sediment controls are not fully implemented, result in excessive turbidity and sediment being transported by surface water and stormwater to shellfish waters, jeopardizing those waters and causing the waters to be closed to the taking of shellfish for human consumption. Additionally, the silting-in of the oyster beds can lead to mortality of planted oysters prior to their reaching market size. Waters that contain excessive silt can also affect the propagation of oysters and interfere with the natural spatfall causing a reduction of naturally set oysters. (Spatfall is the process by which the young oyster attaches itself to stable substances on the bottom). Reduction of spatfall can have a devastating effect on the production of lease-raised oysters because leaseholders regularly plant cultch (oyster shells and marl) to recruit wild spat into their leases. Similarly, inadequately controlled stormwater runoff from ditched and drained coastal properties can transmit excessive levels of fecal coliform bacteria to shellfishing waters, resulting in closure of those waters.

> 11. Stump Sound select oysters raised in shellfish leases in the vicinity of the Holly Ridge tract traditionally command a premium price because of their superior fullness and flavor.

Accordingly, we conclude that intervenors' interests may be directly affected by the outcome of the contested case here. We further conclude that intervenors' interests in having the SPCA erosion requirements apply to HRA are separate from the penalties assessed against HRA by DENR.

In *Empire Power Co. v. N.C. Dep't of Env't & Natural Resources*, the North Carolina Supreme Court held that the types of economic and environmental interests asserted by intervenors are legally protectable. 337 N.C. 569, 447 S.E.2d 768 (1994). In *Empire Power*, the Court addressed whether an adjacent property owner was a "person

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

aggrieved," and thus entitled to a hearing, after the State awarded an air pollution control permit to the respondent utility company. *Id.* The state agency argued that only the permit applicant or permittee was entitled to a contested hearing. *Id.* The Court held that the APA conferred upon any "person aggrieved" the right to commence an administrative hearing involving the person's rights, duties, or privileges. *Id.* at 584, 447 S.E.2d at 777. The Court held that an adjacent property owner was an aggrieved person because he and his family would suffer injury to their health, their property, and their quality of life if the permit were granted. *Id.* at 589, 447 S.E.2d at 780. Here, intervenors need not meet the standard of a "person aggrieved" in order to intervene, but *Empire Power* is instructive regarding the types of economic and environmental interests parties may seek to protect in a contested case. If HRA were exempted from SPCA, the intervenors would suffer injury to their property, livelihoods, and quality of life similar to that asserted by the petitioner in *Empire Power*.

HRA mistakenly relies on *Neuse River Found., Inc., v. Smithfield Foods, Inc.* to support its contention that intervenors' interests are generalized and legally unprotected. 155 N.C. App. 110, 574 S.E.2d 48 (2002), *disc. review denied*, 356 N.C. 675, 577 S.E.2d 628 (2003). The plaintiffs in *Neuse River* alleged public nuisance violations and sought damages to be paid into a court-ordered trust for the restoration of public waters. *Id.* This Court held that the plaintiff river associations lacked standing because none of them alleged injury to "particular" and "important personal rights" that cannot be considered merged in the general public right." *Id.* at 116, 574 S.E.2d at 53. However, because *Neuse River* did not involve the APA or intervention in a contested case, but rather addressed standing in a common law public nuisance action seeking damages, we conclude that *Neuse River* is inapposite. Moreover, under the facts here, we conclude that intervenors' interests in the waters affected by HRA's discharge activities are discrete and particular to certain members of the intervenor organizations, who live near, or who visit, fish or shellfish in the affected waters, and are not merely a generalized public interest.

[2] In its brief, HRA also argues that the intervenors did not show that their interests would be inadequately represented by DENR. However, HRA first raised this argument in its superior court brief and has thus failed to properly bring forward this objection. *Nantz v. Employment Sec. Com.*, 28 N.C. App. 626, 630, 222 S.E.2d 474, 477,

604          IN THE COURT OF APPEALS

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

*aff'd*, 290 N.C. 473, 226 S.E.2d 340 (1976). Accordingly, we do not address this argument.

[3] HRA makes several arguments regarding the ALJ's grant of discovery rights to the intervenors. They assert that the ALJ erred by reopening discovery, by allowing respondents to serve supplemental discovery responses, and by allowing respondents and intervenors to present evidence jointly, and that the superior court erred in affirming these decisions. We disagree.

Although HRA devotes several pages in its brief to arguing that the ALJ's decision to reopen discovery was error, it fails to cite any authority for this argument. Thus, this argument is deemed abandoned. N.C. R. App. P. 28(b)(5) (2005).

[4] HRA argues next in its brief that the ALJ's decision to allow respondents to supplement their discovery responses four days prior to trial, and his subsequent denial of its motion for continuance, were arbitrary and capricious and legal error. The Superior Court thus reviewed these issues *de novo* and under the whole record test. "[O]rders regarding discovery matters are within the discretion of the trial court and will not be upset on appeal absent a showing of abuse of that discretion." *Velez v. Dick Keffer Pontiac-GMC Truck, Inc.*, 144 N.C. App. 589, 595, 551 S.E.2d 873, 877 (2001). *See also Rose v. Isenhour Brick & Tile Co.*, 120 N.C. App. 235, 241, 461 S.E.2d 782, 786 (1995) (holding that trial court did not abuse its discretion in failing to impose sanctions, even though sanctions for discovery abuse would be supported). Similarly, "a motion to continue is addressed to the sound discretion of the trial judge." *Shankle v. Shankle*, 289 N.C. 473, 483, 223 S.E.2d 380, 386 (1976).

DENR initially served its responses to HRA's discovery on 18 August 2000. Then, on 25 July 2001, four business days before the scheduled hearing, DENR delivered supplemental discovery responses, including designation of two witnesses and 102 pages of documents. The new witnesses were both employees of DENR's Division of Forest Resources ("DFR") and the documents were related to their involvement in evaluating the tract. HRA asserts that the ALJ should not have allowed respondents to submit this supplemental discovery because it was untimely. N.C. Gen. Stat. § 150B-33 gives an ALJ power to rule on all objections to discovery and to "regulate the course of the hearing, including discovery." N.C. Gen. Stat. § 150B-33(b)(3)&(4) (1999). The OAH rule governing discovery provides that:

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

> (e) All discovery shall be completed *no later than the first day of the contested case hearing.* An administrative law judge *may shorten or lengthen the period for discovery* and adjust hearing dates accordingly and, when necessary, *allow discovery during the pendency of the contested case hearing.*

26 N.C.A.C. 3.0112 (emphasis added). Thus, under the applicable statute and rules, we conclude that the ALJ had express authority to allow respondents to supplement discovery four days prior to the hearing and did not abuse his discretion.

In support of its argument that the ALJ erred in allowing supplementation, HRA cites *Bumgarner v. Reneau*, 332 N.C. 624, 422 S.E.2d 686 (1992). However, *Bumgarner* involved very different facts and, to the extent that it is relevant here, we conclude that it actually supports the ALJ's actions. In *Bumgarner*, a party attempted to present evidence at trial that it had failed to provide in its response to the opposing party's discovery request. *Id.* at 627, 422 S.E.2d at 688. The Court in *Bumgarner* held that the trial court did not abuse its discretion when it refused to admit this evidence as a sanction for the discovery violation, pursuant to N.C. R. Civ. P. 37. *Id.* at 633, 422 S.E.2d at 691. Although HRA has not argued in its brief that the ALJ abused his discretion in failing to sanction respondents, it did move for exclusion pursuant to Rule 37 in its motion *in limine.* However, *Bumgarner* supports the well-established law that matters of discovery, including how to treat violations, are within the sound discretion of the trial court.

HRA also asserts that DENR's late supplementation changed the case and left it unprepared, thus entitling it to a continuance "as a matter of right." In a contested case hearing,

> [r]equests for a continuance of a hearing shall be granted upon a showing of good cause. . . . In determining whether good cause exists, due regard shall be given to the ability of the party requesting a continuance to proceed effectively without a continuance.

26 N.C.A.C. 3.0118 (2005). This rule, like the civil procedure rule on continuances (N.C. R. Civ. P. 40(b)), "wisely makes no attempt to enumerate them but leaves it to the judge to determine, in each case, whether 'good cause' for a continuance has been shown." *Shankle*, 289 N.C. at 483, 223 S.E.2d at 386. "In passing on the motion the trial court must pass on the grounds urged in support of it, and . . . should consider all the facts in evidence, and not act on its own mental impression or facts outside the record." *Id.*

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

Here, in his order, the ALJ stated that he was ruling, "[i]n the interests of justice, after considering arguments of counsel in this matter regarding Petitioner's Motion *in Limine.*" The ALJ then limited the testimony of DENR's new witnesses to rebuttal only. Furthermore, one of the two "new" witnesses had already been identified by DENR in its May 2000 prehearing statement. Petitioner, through counsel and a consultant, had met with the other new witness over a year prior to trial, and petitioner's counsel met with both of the witnesses 9 months prior to trial during a site visit made by DFR. As mentioned, DENR submitted its supplemental response four days prior to the trial. But there were ten days between the supplementation and the presentation of HRA's case. Then, as the hearing was continued, there were 52 days between the supplementation and the testimony of the DFR witnesses. We conclude that there was no abuse of discretion here.

HRA cites *Green v. Maness* in support of its argument that it was entitled to a continuance "as a matter of right." 69 N.C. App. 292, 294, 316 S.E.2d 917, 919, *disc. rev. denied*, 312 N.C. 622, 323 S.E.2d 922 (1984). In *Green*, a complex medical malpractice case, shortly before trial the defendant met with a new medical expert who agreed to testify. *Id.* at 295-96, 316 S.E.2d at 919-20. The new expert presented a new defense theory, that plaintiff child's defect was caused by a preexisting condition or congenital abnormalities rather than trauma during birth, which would negate any negligence by defendant obstetrician. *Id.* Then, at trial, the new expert presented yet another new defense theory. *Id.* at 297, 316 S.E.2d at 920. Under these particular circumstances, the Court held that the trial court erred in not granting a continuance because the new defense theory resulted in unfair surprise to plaintiff. *Id.* at 299, 316 S.E.2d at 921. We conclude that as HRA asserted that it was exempt from the SPCA because of forestry practices, and there was a history of DFR's involvement in investigating HRA's claims, of which HRA was aware, DENR did not present a new theory which unfairly surprised HRA.

[5] HRA also contends that the ALJ improperly permitted intervenors to present evidence jointly with DENR because the ALJ thus improperly considered evidence admitted through the testimony of witnesses called by the intervenors in determining whether respondents met their burden of proof. HRA asserts that this was both an error of law, and arbitrary and capricious. Accordingly, the superior court reviewed the issue regarding the burden of proof *de novo* and the question of the arbitrariness and capriciousness of the ALJ's reg-

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

ulation of the course of the hearing under the whole record test. Our review of the law and the record indicates that the superior court correctly affirmed.

Here, the parties attended a pretrial conference pursuant to OAH Rule 3.0108, and stipulated that "Respondent and Respondent-Intervenors shall present evidence first." Another paragraph in the pretrial order, regarding witnesses, states that, "Respondent and Respondent-Intervenors will call witnesses jointly." On appeal, HRA contends that they only stipulated that both parties would be permitted to introduce evidence. However, the pretrial order was signed by all parties after the first day of trial, when respondents and intervenors had already begun to present evidence jointly. Moreover, respondents' and intervenors' counsel stated at the outset of the hearing that they intended to put on a joint case. The transcript further reflects that the joint presentation of evidence proceeded for three days before HRA objected. Thus, we conclude that by stipulating to this procedure, and by participating in it for three days without complaint, HRA waived this objection.

[6] HRA also asserts that the ALJ and superior court improperly based their decisions on a "substantial evidence" standard and that the ALJ failed to weigh the evidence. We disagree.

We first conclude that the superior court here properly chose to review this matter *de novo*, as the standard of review or proof is a matter of law. We must now determine whether the superior court exercised this review correctly. The ALJ concluded that "[t]he applicable version of the Administrative Procedure Act directs that the decision in this contested case must be supported by substantial evidence," and that "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." In the applicable version of the APA, a final agency decision "shall be supported by substantial evidence." N.C. Gen. Stat. § 150B-36(b) (1999). Thus, when the ALJ stated this as the law, it was a correct statement. HRA contends, though, that the ALJ improperly applied this substantial evidence standard of review rather than applying an appropriate standard of proof. It argues that the "substantial evidence" standard governs review of the *agency* decision, not the ALJ's, and that the ALJ was required to apply a weighing standard of proof. "Our Supreme Court has stated that the standard of proof in administrative matters is by the greater weight of the evidence." *Dillingham*, 132 N.C. App. at 712, 513 S.E.2d at 828. Nonetheless, we conclude that there is no conflict between the application of an evidentiary stand-

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

ard requiring that a decision be based on substantial evidence and a requirement that a party must persuade the fact-finder by the greater weight of the evidence. Furthermore, our careful review of the record reveals that the ALJ considered and carefully weighed the evidence, making unusually detailed findings of fact, specific credibility determinations, and addressing petitioner's contentions. Thus, we overrule this assignment of error.

[7] HRA next argues that the superior court erred in affirming the ALJ and Agency decisions because the burden of proof was improperly placed upon HRA, the statutory exemption for forestry activities was misread, and DENR was not required to adhere to its own interagency policies. We disagree.

The SPCA does not apply to "[a]ctivities undertaken on forestland for the production and harvesting of timber and timber products," as long as they are conducted in compliance with DENR best management practices. N.C. Gen. Stat. § 113A-52.01 (2) (1999). The ALJ required HRA to prove that this exception applied and HRA contends that this was legal error. The superior court thus properly reviewed this argument *de novo*. We conclude that it did so correctly.

HRA contends that N.C. Gen. Stat. § 113A-64(a)(1) (1999) allocates the burden of proof to DENR to prove both that the SPCA applies and that there was a violation. N.C. Gen. Stat. § 113A-64(a)(1) provides that:

> Any person who violates any of the provisions of this Article or any ordinance, rule, or order adopted or issued pursuant to this Article by the Commission or by a local government, or who initiates or continues a land-disturbing activity for which an erosion and sedimentation control plan is required except in accordance with the terms, conditions, and provisions of an approved plan, is subject to a civil penalty. The maximum civil penalty for a violation is five thousand dollars ($ 5,000). A civil penalty may be assessed from the date of the violation. Each day of a continuing violation shall constitute a separate violation.

*Id.* We find nothing here to support HRA's reading of this statute. To the contrary, our caselaw holds that unless a statute provides otherwise, petitioner has the burden of proof in OAH contested cases. *See, e.g., Peace v. Employment Sec. Comm'n,* 349 N.C. 315; 328, 507 S.E.2d 272, 281 (1998). Indeed, N.C. Gen. Stat. § 150B-23(a) (1999) requires that the petitioner

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

shall state facts tending to establish that the agency named as the respondent has deprived the petitioner of property, has ordered the petitioner to pay a fine or civil penalty, or has otherwise substantially prejudiced the petitioner's rights and that the agency:

(1)  Exceeded its authority or jurisdiction;

(2)  Acted erroneously;

(3)  Failed to use proper procedure;

(4)  Acted arbitrarily or capriciously; or

(5)  Failed to act as required by law or rule.

*Id.* HRA's contention that the SPCA was inapplicable on its site falls under a petitioner's burden of showing that an agency acted outside its authority, pursuant to N.C. Gen. Stat. § 150B-23(a). Accordingly, we overrule this assignment of error.

[8] HRA argues next that the ALJ and superior court misinterpreted the SPCA forestry exemption. Because this involved a question of law, the Superior Court correctly reviewed it *de novo.* HRA challenges conclusion of law 15 of the recommended decision:

> In assessing whether land-disturbing activities undertaken on forestland were undertaken 'for the production and harvesting of timber and timber products,' the purposes for which the activities were conducted and the objective nature of those activities must be evaluated. The fact that a landowner may have a history of management activities and uses of the land involving timber production is not by itself determinative, nor is the fact that timber may have been cut in connection with the land-disturbing activities. Land-disturbing activities undertaken on forestland to prepare the property for development, to improve the marketability of the property for development, or *to generally improve drainage of the property are not activities which qualify for the SPCA's forestry exemption.*

(emphasis added). HRA contends that the italicized language above added a limitation to the exemption which is not supported by the statute, as the assertion that activities undertaken to "generally improve drainage," could refer to those undertaken to improve timber production and operations. We disagree. The SPCA forestry exemption, on its face, applies to activities specifically undertaken "for the production and harvesting of timber and timber products,"

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

not to drainage activities for other purposes, such as general improvement of drainage. N.C. Gen. Stat. § 113A-52.01(2) (1999). We overrule this assignment of error.

[9] Finally, HRA argues that the ALJ erred in concluding that DENR was not required to follow its written memoranda on forestry operations. HRA asserts that this was legal error. Accordingly, the Superior Court reviewed the matter *de novo*, and we conclude that it did so correctly.

DLR and DFR, both subdivisions of DENR, entered into Memoranda of Agreement in 1989 and 1992, in which they agreed to a joint approach in implementing the forestry exemption of the SPCA. DLR agreed to refer potential violations of forestry activity to DFR and DFR stated that it would attempt to mitigate and correct the problems with the responsible party and to take no further action if the violation was cured. HRA contends that these policies are rules, and that DENR was thus required to follow them. We disagree. N.C. Gen. Stat. § 150B-2 (1999) states that the following are *not* rules:

> a. Statements concerning only the internal management of an agency or group of agencies within the same principal office or department . . . including policies and procedures manuals if the statement does not directly or substantially affect the procedural or substantive rights or duties of a person not employed by the agency or group of agencies.
>
> * * *
>
> g. Statements that set forth criteria or guidelines to be used by the staff of an agency in performing . . . investigations, or inspections . . . or in the defense, prosecution, or settlement of cases.

*Id.* In addition, no agency pronouncement of any kind is valid and enforceable as a rule unless adopted in substantial compliance with the notice, comment, public hearing, and other requirements for adopting a rule under the APA. *See* N.C. Gen. Stat. § 150B-18 (1999); *American Guarantee & Liability Ins. Co. v. Ingram*, 32 N.C. App. 552, 555-56, 233 S.E.2d 398, 400, *disc. rev. denied* (1977).

Our review of the record reveals that the 1989 and 1992 interagency memoranda and the DFR policies are statements about how the two agencies intended to evaluate and investigate cases possibly involving the forestry exemption to the SPCA. They do not attempt to define statutory language, to impose additional obligations upon

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

landowners, or to alter the terms of the exemption in any way. Rather, they describe internal agency procedures for applying the forestry exemption, and, as such, are not rules. *See, e.g., Ford v. State, Dep't of Crime Control & Pub. Safety*, 115 N.C. App. 556, 559, 445 S.E.2d 425, 427 (1994) (memorandum detailing guidelines for investigating and prosecuting violations of state law fell squarely within the meaning of N.C. Gen. Stat. § 150B-2 `(8a)(c) and (g), and was not a rule). Furthermore, it is undisputed that these documents were not promulgated as rules. Accordingly, they are not enforceable by HRA, or by the agencies, as rules. We overrule this assignment of error.

HRA also contends that even if the memoranda do not constitute rules, DENR's failure to follow them was arbitrary and capricious. The Superior Court correctly reviewed this argument under the whole record test and concluded that the ALJ and agency correctly decided that even though the memoranda did not constitute rules, the agencies substantially complied with the memoranda. Our review also indicates that the agency's conclusions regarding this matter are supported by substantial evidence of record.

For the reasons discussed above, we affirm.

Affirmed.

Chief Judge MARTIN concurs.

JACKSON, Judge, dissenting.

For the reasons stated below, I respectfully dissent from the majority opinion.

Initially, Petitioner argues that it was legal error for the Administrative Law Judge ("ALJ") to allow the North Carolina Shellfish Growers Association ("Shellfish Growers") and the North Carolina Coastal Federation ("Coastal Federation") to intervene in this matter. The majority has determined that this case must be analyzed pursuant to the legislature's explicit statutory provisions governing intervention in a contested case petition. *See supra*. Although I agree with the majority that it is appropriate to analyze this matter within the framework of a contested case petition, I believe that we must frame the issue even more narrowly, *i.e.*, whether it is appropriate to allow intervention in a contested case petition involving the imposition of a civil penalty.

HOLLY RIDGE ASSOCS., LLC v. N.C. DEP'T OF ENV'T & NATURAL RES.

[176 N.C. App. 594 (2006)]

Within the body of case law regarding contested case petitions, there is a wide array of actions by the State which might give right to such a petition. *Mooresville Hosp. Mgmt. Assocs. v. N.C. Dep't of Health & Human Servs.*, 360 N.C. 156, 622 S.E.2d 621 (2005) (issuance of certificate of need); *Hilliard v. N.C. Dep't of Corr.*, 173 N.C. App. 594, 620 S.E.2d 14 (2005) (state employment dispute); *Godfrey Lumber Co. v. Howard*, 151 N.C. App. 738, 566 S.E.2d 825 (2002) (revocation of stormwater permit); *Beaufort County Schools v. Roach*, 114 N.C. App. 330, 443 S.E.2d 339 (1994) (special education). In some instances, intervention by a third party may be appropriate and properly within the discretion of the ALJ. *See Empire Power Co. v. N.C. Dep't of E.H.N.R.*, 337 N.C. 569, 447 S.E.2d 768 (1994) (allowing air quality permit holder to intervene in contested case challenging state agency's issuance of permit); *Albemarle Mental Health Ctr. v. N.C. Dep't of Health & Human Servs.*, 159 N.C. App. 66, 582 S.E.2d 651 (2003) (Medicaid reimbursement appeal); *Mt. Olive Home Health Care Agency, Inc. v. N.C. Dep't of Human Resources*, 78 N.C. App. 224, 336 S.E.2d 625 (1985) (unsuccessful applicant for Certificate of Need permitted to intervene in contested case hearing). In the case of a state agency's imposition of a civil penalty, I believe that it is not. Further, my research has disclosed no case law in this State nor in any other state jurisdiction allowing intervention by a private individual or entity in a matter involving imposition of a civil penalty by a state. *But see Sanders et al. v. Pacific Gas and Electric Co.*, 53 Cal App. 3d 661 (1975) (allowing the *State* to intervene to pursue civil penalties in a superior court suit filed by private property owners). Moreover, in federal cases allowing for intervention by private entities, in most instances, the intervenors either have been precluded or voluntarily have chosen not to involve themselves in the claims involving the assessment of civil penalties. *U.S. v. Metropolitan St. Louis Sewer Dist.*, 883 F.2d 54, 55 (8th Cir. 1989) (intervenors complaint incorporated "all of the allegations set forth in the complaint filed by the United States, except those relating to the payment of civil penalties"); *U.S. v. City of Toledo*, 867 F. Supp. 595, 597 (N.D. Ohio 1994) ("a citizen-intervenor . . . can only seek remedies for ongoing violations of federal law and not civil penalties for past violations"); *but see U.S. v. Duke Energy Corp.*, 278 F. Supp. 2d 619, 649 (M.D.N.C. 2003) (allowing intervenors to participate in action for civil penalty without challenge by defendant).

The legislature has delegated to the several executive branch agencies the authority to impose civil penalties for a variety of purposes. *Meads v. N.C. Dep't of Agric.*, 349 N.C. 656, 509 S.E.2d 165

IN RE J.L.B.M.

[176 N.C. App. 613 (2006)]

(1998) (violation of various pesticide regulations by aerial pesticide applicator); *O.S. Steel Erectors v. Brooks, Com'r of Labor*, 84 N.C. App. 630, 353 S.E.2d 869 (1987) (violation of Occupational Safety and Health regulations); *N.C. Private Protective Services Bd. v. Gray, Inc.*, 87 N.C. App. 143, 360 S.E.2d 135 (1987) (failure to register unarmed guards and armed guards in accordance with Private Protective Services statutes and regulations). That delegation properly rests with an agency of the State, not with a private citizen or association. By allowing the Shellfish Growers and the Coastal Federation to intervene in this matter, the ALJ effectively deputized both entities with the authority of the State and enabled both of them to act as private prosecutors. *See In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 379, 379 S.E.2d 30, 34 (1989) ("Article IV, section 3 of the Constitution contemplates that discretionary judicial authority may be granted to an agency when reasonably necessary to accomplish the agency's purpose."); *State of North Carolina ex rel. Cobey v. Cook*, 118 N.C. App. 70, 74, 453 S.E.2d 553, 556 (1995) (State agency's "authority to issue a penalty is . . . reasonably necessary to the enforcement of" its statutes). I cannot believe that this was the legislature's intention in creating the various schemes for assessment of civil money penalties that flow throughout State government, more particularly, the Sedimentation Pollution Control Act, under which Petitioner was assessed. N.C. Gen. Stat. § 113A-50 *et seq.* Therefore, I would reverse the trial court. As I believe that Intervenors should not have been permitted to intervene in the first place, I do not address the remaining issues raised by Petitioner on appeal.